**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Yu Shi, Esq. (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT PATRON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>KEVIN M. DOTTS and KEITH SOLDAN<br><br>Defendants. | Case No.: 1:19-cv-05362-PGG<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

Lead Plaintiff Robert Patron ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his amended complaint against Defendants (defined below), allege the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through his attorneys, which included, among other things, a review and analysis of: (i) Fusion Connect, Inc. ("Fusion" or the "Company")'s public filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) public reports and news articles; (iii) transcripts of Defendants' conference calls; (v) interviews with witnesses with relevant information; and (vi) other publicly-available material and data identified herein. Plaintiff's investigation is continuing, and many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control or custody. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired Fusion common stock from May 11, 2018 through April 2, 2019, inclusive (the "Class Period").[1] Plaintiff seek to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

[1] Excluded from the Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of Fusion and Birch Communications Holdings, Inc. at all relevant times; members of such excluded persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

2. Fusion is a provider of telecommunications and cloud-based computing services. On May 4, 2018, Fusion completed its acquisition of Birch Communication Holdings, Inc. ("Birch"), a privately-held company that engaged in the same line of business as Fusion.

3. Defendant Dotts was the Chief Financial Officer and Principal Accounting Officer at Birch prior to the acquisition. After the acquisition, he assumed the same positions at Fusion.

4. Defendant Soldan was the Vice President of Finance at Birch prior to the acquisition. After the acquisition, he assumed the same position at Fusion.

5. Birch was a once-proud company that had fallen on hard times, and by 2017, was on life support. Defendants Dotts and Soldan were eager to find a buyer to acquire and rescue Birch.

6. Fusion, whose growth plan primarily involves acquiring other companies, targeted Birch because it engaged in the same business, and adding Birch's capabilities would enable Fusion to compete for bigger contracts with larger clients, and expand its geographic reach to the southern United States, where Birch had a strong presence.

7. For Defendants Dotts and Soldan, the merger with Fusion had numerous benefits. Not only would it rescue the struggling Birch, but would allow the two of them to become top executives at Fusion, a publicly-traded, NASDAQ-listed company.

8. Indeed, if the merger with Fusion were to succeed, Dotts and Soldan would not only be able to get out of a sinking ship that is Birch, but also be rewarded with the prestige of being executives at a public company.

9. As part of the merger, Dotts and Soldan provided Fusion and its shareholders with Birch's financial statements for the year ended December 31, 2017, which Dotts and Soldan had prepared.

10. Fusion announced the completion of the merger with Birch on May 4, 2018 on a form 8-K filed with the SEC. Included in this filing were Birch's financial statements for 2017.

11. Following the merger, Fusion issued quarterly financials results for the combined Fusion-Birch entity for the quarters ended June 30 and August 30, 2018. Defendants Dotts and Soldan signed those quarterly reports.

12. On April 2, 2019, Fusion announced that the 2017 financial results for Birch, and the quarterly financial results for the second and third quarters of 2018 of Fusion post-merger, could no longer be relied upon because they understated expenses by material amounts. Fusion attributed the understatement of expenses to the Birch subsidiaries that Fusion acquired. In the same announcement, Fusion disclosed that Birch had numerous internal controls deficiencies; none of which Defendants Dotts and Soldan – the two top financial and accounting officers at Birch – disclosed prior to the merger.

13. This adverse disclosure shocked the market and caused an 80% drop in the price of Fusion common stock.

14. The bad news for Fusion and its shareholders continued. On June 3, 2019, Fusion filed for Chapter 11 bankruptcy, attributing its financial woes and inability to pay creditors to the disastrous merger with Birch.

## **JURISDICTION AND VENUE**

15. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

16. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

17. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Defendants conduct business in this judicial district and Fusion is headquartered in this judicial district.

18. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

**PARTIES**

19. Lead Plaintiff Robert Patron ("Patron"), as set forth in Patron's previously-filed PSLRA Certification (Dkt. No. 17-2), incorporated by reference herein, purchased Fusion common stock during the Class Period, and was damaged thereby.

20. Non-Party Fusion is a Delaware company headquartered in New York, New York. Fusion is a provider of cloud-based solutions, including cloud communications, cloud connectivity, cloud computing, etc., to customers in the United States and Canada. Fusion became a publicly-listed company following its initial public offering (IPO) in February 2005. It traded on NASDAQ under the ticker symbol "FSNN" until May 13, 2019, when it was delisted by NASDAQ. Fusion is not named as a Defendant because on June 3, 2019, Fusion filed for Chapter 11 bankruptcy protection in the Bankruptcy Court of the Southern District of New York.

21. Non-Party Birch was a provider of IP-based communications services, high speed internet services, and cloud computing services to business and residential customers in the United States, with a focus on the south and southwestern U.S. regions. On May 4, 2018, Birch was acquired by Fusion via a reverse merger and became part of Fusion.

22. Defendant Kevin M. Dotts ("Dotts") was the Chief Financial Officer ("CFO"), Principal Accounting Officer, and Executive Vice President of Fusion from May 4, 2018, when the Fusion-Birch merger closed, until his resignation on August 13, 2018. Previously, from February 2017 to May 4, 2018, Defendant Dotts was the CFO and Executive Vice President of Birch.

23. Defendant Keith Soldan ("Soldan") has been the CFO and Principal Accounting Officer at Fusion since August 13, 2018, when he took over the CFO and Principal Accounting Officer position from Defendant Dotts. From May 4, 2018 to August 12, 2018, Defendant Soldan was the VP of Finance at Fusion. Prior to that, from March 2017 until its acquisition by Fusion on May 4, 2018, Defendant Soldan was the VP of Corporate Finance and Accounting at Birch.

24. Defendants Dotts and Soldan are collectively the "Defendants."

## DETAILED ALLEGATIONS OF FRAUD

*Background to Fusion's Acquisition of Birch*

25. By 2017, Birch was a once-proud company that was struggling to stay afloat. Indeed, while in 2016 Birch recorded revenues of $603 million and a net loss of $27 million, by 2017 revenue would decline to $550 million while net loss ballooned to $85 million.

26. Dotts and Soldan arrived at Birch in February and March 2017, respectively. They soon engaged in merger talks with Fusion, and by August of 2017, had reached a preliminary agreement for Birch to be acquired by Fusion.

27. Since 2012, Fusion had embarked on a growth strategy that relied on the acquisition of other companies. From 2012 to 2017, Fusion acquired seven companies as part of its growth strategy.

28. Birch was an attractive target for Fusion because Birch and Fusion engaged in the same business, and the acquisition of Birch would allow Fusion to expand its capabilities and better compete for contracts with larger clients. Moreover, because Birch's clients were primarily based in the South, the acquisition of Birch would also enable New York-based Fusion to expand its geographic reach.

29. According to Fierce Telecom, which publishes an online "daily monitor" about the telecommunications industry, the merger with Birch would make Fusion a competitive threat to larger telecommunications companies such as AT&T, Verizon, and Comcast.

30. For Dotts and Soldan, the merger with Fusion was a bonanza, not only because the floundering and privately-held Birch which they led would become part of an established, publicly-listed company, but also because Dotts and Soldan themselves would assume top-executive roles at Fusion after the acquisition.

31. Indeed, as part of the merger agreement that Dotts and Soldan negotiated with Fusion, Dotts would become the CFO and Principal Accounting Officer of Fusion following the consummation of the merger, while Soldan would become Fusion's VP of Finance.

32. In other words, if the Birch-Fusion merger were to go through, Dotts and Soldan would go from being officers at a struggling private company to becoming top executives at NASDAQ-listed Fusion. Dotts and Soldan therefore were extremely motivated to consummate the Birch-Fusion merger.

*Consummation of the Birch-Fusion Merger and Defendants' False Statements*

33. On May 10, 2018, Fusion filed a Form 8-K with the SEC formally announcing the completion of its acquisition of Birch (the "Merger").[2]

34. The May 10, 2018 Form 8-K (the "Merger Announcement 8-K") included the financial statements of Birch for the fiscal year ended December 31, 2017 ("Birch 2017 Financials"). The Birch 2017 Financials were prepared by Birch's management. Dotts, as Birch's CFO, and Soldan, as Birch's VP of Corporate Finance and Accounting, participated in and were responsible for the preparation of the Birch 2017 Financials that were given to Fusion to file with the SEC and share with investors as part of the Merger.

35. Birch's 2017 Financials included a report from Birch's auditors, which stated in part:

> Management is responsible for the preparation and fair presentation of these consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

36. The Birch 2017 Financials reported an Operating Loss of $33,413,000.

37. On August 14, 2018, Fusion filed its quarterly report on Form 10-Q with the SEC for the second quarter of 2018 (the "Q2 2018 10-Q"). The Q2 2018-8K was the first quarterly report after the Merger; as such, it was the first quarterly report to include the combined financials of Fusion and Birch.

38. The Q2 2018 8-K was signed by Defendant Dotts.

2 While Fusion was the acquirer for all legal purposes, for accounting purposes the Merger was structured as a "reverse acquisition" whereby Birch was treated as the accounting acquirer. Accordingly, Birch's historical financial results replaced Fusion's historical results for all periods prior to the Merger, and all financial results after the Merger would reflect the financial results of both Birch and Fusion combined.

39. The Q2 2018 10Q reported Total Operating Expenses of $59,954,000 and an Operating Loss of $5,340,000.

40. On November 13, 2018, Fusion filed its quarterly report on Form 10-Q with the SEC for the third quarter of 2018 (the "Q3 2018 10Q"). The Q3 2018 10-Q was signed by Defendant Soldan.

41. The Q3 2018 10Q reported Total Operating Expenses of $66,486,000 and Operating Income of $3,961,000.

42. The Merger Announcement 8-K, the Q2 2018 10Q, and the Q3 2018 10Q were false and misleading because they materially understated expenses, and as a result, materially understated losses.

*The Truth is Revealed*

43. On April 2, 2019, after market close, Fusion filed a Form 8-K with the SEC (the "Restatement 8-K") disclosing that the Birch 2017 Financials, as well as Fusion's financial results for quarters ended June and August 2018 reported on the Q2 2018 10Q and Q3 2018 10Q may no longer be relied upon because they understated expenses by material amounts. Fusion attributed the understatement of expenses to the Birch subsidiaries that it acquired in the Merger.

44. The Restatement 8-K announced that Fusion would restate its financials for the affected periods.

45. According to the Restatement 8-K, expenses were understated by between $2.3 million and $3.0 million for the year ended December 31, 2017 (*i.e.* the Birch 2017 Financials), by between $1.7 and $2.3 million for the quarter ended June 30, 2018 (*i.e.* the Q2 2018 10Q), and by between $3.4 and $4.1 million for the quarter ended September 30, 2018 (*i.e.* the Q3 2018 10Q). Income for the affected period would be reduced by the same amount.

46. The chart below summarizes the discrepancy between the figures originally reported and the true amounts:

| Year Ended 12/31/2017 | | | |
|---|---|---|---|
| **Item** | **Originally Stated** | **Correct Amount** | **% Understated** |
| Operating Loss | $33,413,000 | $35,713,000 - $36,413,000 | 6.9% - 8.9% |
| **Quarter Ended 6/30/2018** | | | |
| **Item** | **Originally Stated** | **Correct Amount** | **% Understated** |
| Total Operating Expenses | $59,954,000 | $61,654,000 - $62,254,000 | 6.9% - 8.9% |
| Operating Loss | $5,340,000 | $7,040,000 - $7,640,000 | 31.8% - 43.1% |
| **Quarter Ended 9/30/2018** | | | |
| **Item** | **Originally Stated** | **Correct Amount** | **% Understated** |
| Total Operating Expenses | $66,486,000 | $69,886,000 - $70,586,000 | 5.1% - 6.2% |
| Operating Income | $3,961,000 | $561,000 – ($139,000) | 85.8% - 103.5% |

47. Indeed, the amounts to be restated were so drastic that, for example, Fusion's Q3 2018 Operating Income could potentially turn into a loss instead.

48. Unsurprisingly, the market reacted negatively to the adverse disclosure. Fusion's stock price fell drastically, from $1.20 at close on April 2, 2019 to $0.22 at close on April 3, 2019, a drop of more than 80%.

*Post-Class Period Developments*

49. The acquisition of Birch was a disaster for Fusion and its shareholders. On June 3, 2019, unable to pay back the loans that it took out to finance the Merger, Fusion filed for Chapter 11 bankruptcy in the bankruptcy court of the Southern District of New York. In the disclosure statement filed as part of the bankruptcy proceeding, Fusion attributed the bankruptcy and its financial woes to the failed Birch merger.

## ADDITIONAL ALLEGATIONS SUPPORTING SCIENTER

50. In the Restatement 8-K, Fusion disclosed a host of serious, material weaknesses relating to internal controls at the acquired Birch entities, including:

a. Material weaknesses relating to the design and implementation of internal controls policies

b. Unauthorized personnel having access to Birch's computer systems

c. Insufficient documentations on how controls were supposed to operate

d. Lack of adequate training and resources in information technology

51. It is inconceivable that Defendants Dotts and Soldan, as the two top accounting officers at Birch and responsible for designing and implementing its internal controls, were unaware of these serious internal controls deficiencies.

52. In their eagerness to consummate the Merger, Dotts and Soldan did not disclose any of these material weaknesses to Fusion.

53. Dotts and Soldan were motivated to conceal the internal controls deficiencies and understate Birch's expenses so that Birch would be a more attractive acquisition target.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action as a class action pursuant to Rule 23 Federal Rule of Civil Procedure on behalf of himself and all persons or entities that purchased or otherwise acquired Fusion common stock during the Class Period.[3]

3 Excluded from the Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of Fusion and Birch at all relevant times; members of such excluded persons' immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

55. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fusion common stock was actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

56. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the Exchange Act were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and/or prospects of Fusion;

(c) whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Defendants caused Fusion to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements;

(f) whether the prices of Fusion common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

60. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things: (a) Defendants made public misrepresentations or failed to disclose materials facts during the Class Period; (b) the false and misleading statements and/or omissions were material; (c) Fusion common stock traded in efficient markets during the Class Period.

Fusion common stock traded in efficient markets during the Class Period for the following reasons:

- Fusion common stock met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;
- On average more than 1% of Fusion's total common stock outstanding were traded weekly during the Class Period;

- As a public issuer, Fusion filed periodic public reports with the SEC and NASDAQ;
- Fusion regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- Fusion was followed by numerous securities analysts employed by major brokerage firms, including Craig-Hallum Capital Group and Dawson James Securities, who wrote reports that were widely distributed and publicly available;
- More than ten market makers made a market in Fusion common stock during the Class Period;
- Fusion met the criteria for eligibility to file a S-3 Registration Statement during the Class Period;
- The price of Fusion common stock responded quickly to incorporate and reflect new public information concerning Fusion during the Class Period.

Based on the foregoing, the market for Fusion common stock promptly digested current information regarding Fusion from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against Defendants**

62. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63. This Count, asserted against Defendants, is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64. During the Class Period, Defendants and the Company engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fusion common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Fusion common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

65. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the SEC filings, press releases, audit reports, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fusion common stock. Such reports, filings, releases and statements were materially false and

misleading in that they failed to disclose material adverse information and misrepresented the truth about Fusion's finances.

66. By virtue of their positions at Fusion and Birch, the Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Defendants. Said acts and omissions of the Defendants were committed willfully or with reckless disregard for the truth. In addition, each of the Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

67. Information showing that the Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As senior executives of Fusion and Birch, the Defendants had knowledge of the details of Fusion and Birch's internal affairs.

68. Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, Defendants were able to and did, directly or indirectly, control the content of the statements of Fusion. As officers and/or directors of a publicly-held company, Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fusion's financial condition. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for Fusion common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Fusion's financial condition which were misrepresented and/or concealed

by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Fusion common stock at artificially inflated prices and relied upon the price of Fusion common stock, the integrity of the market for the securities and/or upon statements disseminated by the Defendants, and were damaged upon the revelation of the alleged corrective disclosures.

69. During the Class Period, Fusion common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired Fusion common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid.

70. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of Fusion common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

71. The Company and the Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of the Company's common stock during the Class Period.

72. The Company and Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

73. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

## COUNT II

### Violation of Section 20(a) of The Exchange Act Against Defendants

74. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75. During the Class Period, Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

76. As senior officers of a publicly owned company, Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition

and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

77. Because of their positions of control and authority as senior officers, Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's common stock.

78. Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions at the Company, Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

79. By reason of the above conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, pray for judgment and relief as follows:

(a) Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as Class Representative;

(b) Awarding damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, together with interest thereon;

(c) Awarding Plaintiff and the other members of the Class prejudgment and post-interest; and

(d) Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demand a trial by jury.

Dated: December 6, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence Rosen
Laurence Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Yu Shi, Esq. (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

*Lead Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of December 2019, a true and correct copy of the foregoing AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen
Laurence Rosen