# EXHIBIT 8

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X
                                                           :
**In re**                                                  :          **Chapter 11**
                                                           :
**FUSION CONNECT, INC.,** *et al.,*                        :          **Case No. 19-[_____] (___)**
                                                           :
                          **Debtors.**[1]                  :          **(Joint Administration Pending)**
                                                           :
-----------------------------------------------------------X

**DECLARATION OF KEITH SOLDAN**
**PURSUANT TO RULE 1007-2 OF LOCAL BANKRUPTCY**
**RULES FOR SOUTHERN DISTRICT OF NEW YORK**

I, Keith Soldan, pursuant to 28 U.S.C. § 1746, hereby declare that the following is

true to the best of my knowledge, information, and belief:

1.      I am the Chief Financial Officer of Fusion Connect, Inc. ("**Fusion**") and its

affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**" or the "**Company**"). I have served in this role since November 2018,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fusion Connect, Inc. (2021); Fusion BCHI Acquisition LLC (7402); Fusion NBS Acquisition Corp. (4332); Fusion LLC (0994); Fusion MPHC Holding Corporation (3066); Fusion MPHC Group, Inc. (1529); Fusion Cloud Company LLC (5568); Fusion Cloud Services, LLC (3012); Fusion CB Holdings, Inc. (6526); Fusion Communications, LLC (8337); Fusion Telecom, LLC (0894); Fusion Texas Holdings, Inc. (2636); Fusion Telecom of Kansas, LLC (0075); Fusion Telecom of Oklahoma, LLC (3260); Fusion Telecom of Missouri, LLC (5329); Fusion Telecom of Texas Ltd., L.L.P. (8531); Bircan Holdings, LLC (2819); Fusion Management Services LLC (5597); and Fusion PM Holdings, Inc. (2478). The principal executive office of the Debtors is located at 420 Lexington Avenue, Suite 1718, New York, New York 10170.

having previously served as a Vice President of the Company. Before joining Fusion, I served as Vice President of Corporate Finance and Accounting at Birch Communications from March 2017 to May 2018. I also served as Vice President, Corporate Controller for Internap from March 2016 to March 2017 and as its Vice President Corporate Finance from March 2014 to March 2016. Prior to joining Internap, I worked at EarthLink from July 2005 through April 2014 where I held various positions including Senior Director and Divisional Chief Financial Officer.

2. On the date hereof (the "**Commencement Date**"), the Debtors commenced with this court (the "**Bankruptcy Court**") voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, books and records, and the circumstances leading to the commencement of these chapter 11 cases.

3. I submit this Declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") to assist the Bankruptcy Court and parties in interest in understanding the events and circumstances that led to the commencement of these chapter 11 cases and in support of the motions and applications that the Debtors have filed with the Bankruptcy Court, including the "first day pleadings" (the "**First Day Pleadings**"). I am authorized by each of the Debtors to submit this declaration (this "**Declaration**") on their behalf. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the Company or advisors to the Debtors, or my opinion based upon my experience, knowledge, and information concerning the Company and the telecommunications industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

WEIL:\97049160\8\47019.0003

4.     The Debtors have requested a variety of relief in the First Day Pleadings to promote the uninterrupted operation of the Debtors' business following the commencement of these chapter 11 cases. I am familiar with the contents of each First Day Pleading, and I believe the relief sought therein is necessary to permit the Debtors to have a smooth transition into chapter 11. I further believe that the relief requested in the First Day Pleadings will preserve the value of the Debtors' estates.

5.     This Declaration is organized in six sections:

- Section I provides an overview of the Restructuring Support Agreement, including a summary of the terms of a reorganization transaction supported by the First Lien Ad Hoc Group (defined below);

- Section II describes the Company's business, both in terms of its history, as well as its current operations;

- Section III summarizes the Company's organizational and capital structure;

- Section IV describes the circumstances that led to the commencement of these chapter 11 cases;

- Section V provides a summary of the First Day Pleadings, the factual bases for the relief requested therein and other information related to these chapter 11 cases; and

- Section VI identifies the attached schedules of information required by Local Rule 1007-2.

## I.     Overview of Chapter 11 Cases

6.     Fusion is a provider of integrated cloud solutions to small, medium, and large businesses. The Company offers telecommunications services to customers, enabling them to successfully migrate to and efficiently use the increasing power of the cloud. As described below, these services include cloud communications, cloud connectivity, and cloud computing.

7.     A significant part of the Company's historical expansion strategy has been to make strategic acquisitions of other providers. In May and June of 2018, the Company closed

3

a reverse merger transactions with Birch Communications Holdings, Inc. ("**Birch**" and such transaction, the "**Birch Merger**") and MegaPath Holding Corp. ("**MegaPath**" and such transaction, the "**MegaPath Merger**"), respectively. The Company pursued the Birch Merger with a vision of leveraging its existing processes and structures to create synergies between Fusion's and Birch's joined customer bases, combine network infrastructure assets to improve operational efficiencies, and ultimately drive material growth in Fusion's and Birch's combined annual revenue. In connection with the Birch Merger and MegaPath Merger, the Company incurred $680 million in secured debt.

8. Unfortunately, due to underperformance compared to business projections, the Company found itself with limited liquidity and at risk of default under its debt documents by early 2019. Accordingly, in early 2019, the Company began its formal review of strategic alternatives and has engaged in constructive dialogue and communications with its key constituents over the past several months, including an ad hoc group of first lien lenders collectively holding almost 70% of the total amount outstanding under the First Lien Credit Agreement (the "**First Lien Ad Hoc Group**"), an ad hoc group of revolving and term loan A lenders, an ad hoc group of second lien lenders collectively holding 100% of the total amount outstanding under the Second Lien Credit Agreement (the "**Second Lien Ad Hoc Group**") and the Company's majority shareholder, Birch Equity Partners (the "**Majority Shareholder**"). Those efforts culminated in the execution of a Restructuring Support Agreement among the Company and the First Lien Ad Hoc Group that provides the Company with a clear path to a confirmable chapter 11 plan of reorganization and a viable recapitalization—in which, among other things, approximately $300 million in funded debt will be extinguished, leaving a

4

significantly deleveraged reorganized Company wholly owned by the First Lien Lenders and an appropriately sized exit working capital facility (the "**Reorganization Transaction**").

9.      As described in greater detail in the Bidding Procedures Declaration,[2] the Company began a robust marketing and sale process in May 2019 (the "**Prepetition Marketing Process**"), pursuant to which the Company's advisors contacted over forty (40) potential investors to gauge interest in either a new capital investment in the Company or an acquisition of the Company's business.  Several of these parties have indicated interest, and the Company and its advisors have continued to engage in discussions with these parties, coordinate discussions with the Company's management team, and provide access to the electronic dataroom.  The Restructuring Support Agreement contemplates the continuation of the Company's Prepetition Marketing Process (together with the postpetition sale and marketing process, the "**Sale Process**").  Pursuant to the Sale Process, any and all bids for all or some portion of the Company's business will be evaluated as a precursor to confirmation of the chapter 11 plan.  The Sale Process will provide a public and competitive forum in which the Debtors will seek bids or proposals for potential transactions that, if representing higher or otherwise better value for the Debtors' creditor constituencies than the Reorganization Transaction, will be pursued under a plan of reorganization as an alternative to the Reorganization Transaction.

10.      The Restructuring Support Agreement provides the Company with a baseline restructuring proposal that ensures the business will be able to continue as a going concern during and after these chapter 11 cases.  Nonetheless, the Company is open to considering other potential transaction structures to the extent any such transaction reflects a higher or better offer

---

[2]      *See Declaration of John Singh in Support of Debtors' Motion for Entry of an Order (I) Approving (A) Bidding Procedures and (B) Assumption and Assignment Procedures and (II) Granting Related Relief*, to be filed.

WEIL:\97049160\8\47019.0003

39.     To finance the Birch Merger, the Company entered into the First Lien Credit Agreement and the Second Lien Credit Agreement.[10]   The Company used proceeds from the foregoing to: (a) refinance the Company's and its subsidiaries' existing indebtedness, (b) pay expenses related to the Birch Merger and associated transactions, and (c) pay down certain subordinated notes owed by Birch to Holcombe T. Green, Jr., R. Kirby Godsey, and Holcombe T. Green, III.   The Company also applied a portion of the proceeds from the First Lien Credit Agreement toward its acquisition of MegaPath.

40.     The Company pursued the Birch Merger with a vision of leveraging its existing processes and structures to create synergies between Fusion's and Birch's joined customer bases, combine network infrastructure assets to improve operational efficiencies, and ultimately drive material growth in Fusion's and Birch's combined annual revenue.   While the Company was able to improve operations and use the Birch Merger as a platform for expansion, the Birch business plan proved to be overly aggressive in terms of sustained customer bookings and price increases.   Missed revenue projections left the Company with significantly less liquidity than originally anticipated.

## B.     Amortization and Interest Payments

41.     The Company's liquidity position exposed the Company to default risk under both the First Lien Credit Agreement and Second Lien Credit Agreement.   By the end of March 2019, the Company faced an upcoming $6.7 million amortization payment under the First Lien Credit Agreement and a $300,000 interest payment on the Green Note due on April 1, 2019 and April 2, 2019, respectively (together, the "**Amortization and Interest Payments**").   Given the Company's limited working capital, it determined that it was unlikely to be able to make the

---

[10]     On the same date, Fusion entered into the Green Note, and Fusion BCHI entered into the Bircan Notes.

WEIL:\97049160\8\47019.0003

19-11811    Case 1:19-cv-05262-BCG    Doc 2    Filed 06/05/19    Document 45-8    Filed 01/21/20    Entered 06/03/19 07:11:32    Main Document    Pg

20 of 127

Amortization and Interest Payments, and such non-payment would likely trigger a cross-default under the Second Lien Credit Agreement.

42.     Thus, the Company began liaising with its key stakeholder constituencies to obtain a waiver in connection with the Company's existing defaults, and to engage in negotiations regarding potential restructuring of the Company's long-term capital structure. Meanwhile, due to the Company's failure to timely file its 2018 Form 10-K with the SEC and to pay certain NASDAQ listing fees, NASDAQ delisted Fusion's common stock from its exchange, effective May 13, 2019.

C.     **Pursuit of Debt Document Amendments and New Equity Investment**

43.     Weil, Gotshal & Manges LLP and FTI Consulting, Inc. were each retained in March of 2019 to assist the Company in exploring and evaluating potential transactions to improve its financial position.  The Company and its advisors began by engaging in discussions with the Company's Majority Shareholder and certain lenders regarding the possibility of a new capital infusion and amendments to the First Lien Credit Agreement and the Second Lien Credit Agreement.  By early April of 2019, negotiations had progressed to a point where the Company, the Majority Shareholder, and certain lenders were close to finalizing an agreement in principle. Ultimately, however, the parties were unable to agree on final terms.

D.     **Vendor Relationships and Lingo Dispute**

44.     The Company's precarious liquidity position forced the Company to stretch trade terms with its vendors.  As a result, the Company's relationships with many of its vendors have become increasingly strained.  Several of these vendors are vital to the Company's ongoing operations.

45.     The Company also is involved in disputes with Lingo regarding alleged calculation errors made in connection with the Birch Merger and also stemming from Lingo's

WEIL:\97049160\8\47019.0003