**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (PK 9384)
Laurence Rosen (LR 5733)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Lead Plaintiff
and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PATRON, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN M. DOTTS and KEITH SOLDAN <br><br> Defendants. | Case No. 1:19-cv-05362-PGG <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY
OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND
<u>ESTABLISHING NOTICE PROCEDURES</u>**

**TABLE OF CONTENTS**

I.　INTRODUCTION ................................................................................................ 1

II.　PROCEDURAL HISTORY.................................................................................. 2

III.　SETTLEMENT DISCUSSIONS ......................................................................... 2

IV.　FACTUAL BACKGROUND ............................................................................... 3

V.　THE SETTLEMENT'S TERMS .......................................................................... 3

　　A.　Stipulation.................................................................................................. 3

　　B.　Confidential Supplemental Agreement....................................................... 4

　　C.　Award of Attorneys' Fees.......................................................................... 4

VI.　ARGUMENT....................................................................................................... 5

　　A.　The Court should approve the Settlement................................................... 5

　　B.　Lead Plaintiff and His Counsel Have Adequately Represented the Class.............. 6

　　C.　The Proposed Settlement Is the Result of Good Faith Arm's-Length
　　　　Negotiations by Informed, Experienced Counsel Who Were Aware of the
　　　　Risks of the Litigation................................................................................ 6

　　D.　The Relief Provided to the Class Is Adequate ........................................... 8

　　　　1.　The Substantial Benefits for the Class, Weighted Against the
　　　　　　Costs, Risks and Delay of Trial and Appeal Support Preliminary
　　　　　　Approval ....................................................................................... 8

　　　　　　a.　The Complexity, Expense, and Likely Duration of the Litigation . 9

　　　　　　b.　The Stage of the Proceedings and the Amount of Discovery
　　　　　　　　Completed ...................................................................... 9

　　　　　　c.　The Risk of Establishing Liability and Damages ........................ 10

　　　　　　d.　The Risks of Maintaining the Class Action Through Trial........... 11

　　　　　　e.　The Ability of Defendants to Withstand a Greater Judgment and
　　　　　　　　the Reasonableness of the Settlement Fund................................ 11

　　E.　The Proposed Method for Distributing Relief Is Effective................................... 12

　　　　1.　Attorneys' Fees, Reimbursement of Expenses, and Award to
　　　　　　Plaintiff ............................................................................... 12

　　　　2.　The Parties Have No Side Agreements Besides Opt-Outs ....................... 13

i

3.      There Was No Preferential Treatment; The Plan of Allocation Is
        Designed to Treat Class Members Equitably ............................................. 13

VII.    THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON
        CERTIFICATION TO PROVIDE NOTICE TO THE PUTATIVE
        SETTLEMENT CLASS ...................................................................................... 14

        A.    Numerosity .......................................................................................... 15

        B.    Commonality ........................................................................................ 15

        C.    Typicality ............................................................................................. 16

        D.    Adequacy .............................................................................................. 17

              1.    Adequacy of the Proposed Class Representatives .................................. 17
              2.    Rule 23(g) Adequacy of the Proposed Class Counsel ............................. 17

        E.    Common Questions Predominate and the Class Is Superior to Other
              Methods of Adjudication ...................................................................... 18

VIII.   THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
        CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE
        PSLRA, AND DUE PROCESS .......................................................................... 20

IX.     PROPOSED SCHEDULE OF EVENTS ........................................................... 22

X.      CONCLUSION .................................................................................................. 23

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................... 18

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .................................................. 14, 19

*Bellows v. NCO Fin. Sys., Inc.*,
No. 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ............................ 6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007).................................................................................................... 15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................................... 8

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)...................................................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) .......................................................... 22

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) ............................................................................................. 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014) ....................................................... 11

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018).................................... 13

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................................................... 10

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ............................................................................................ 13

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)..................................................................................................... 17

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................................ 16

iii

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 15

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................. 7

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................... 17, 19

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)............................................................................. 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014)................................................................. 13

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ....................................................................... 15

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015)........................................... 13

*In re Warner Commc'ns Sec. Litig.*,
798 F.2d 35 (2d Cir. 1986)................................................................................ 8

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015).............................................................................. 16

*Karvaly v. eBay, Inc.*,
245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................ 14

*Marisol A. by Forbes v. Giuliani*,
929 F. Supp. 662 (S.D.N.Y. 1996)..................................................................... 16

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012)................................................................. 17

*Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*,
No. 14CV7539MKBCLP, 2019 WL 5204809 (E.D.N.Y. Oct. 15, 2019) ................................. 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ............................................ 20, 22

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ..................................... 19

iv

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009) ................................................................... 10

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................................. 15, 16

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................... 7

*Soberal-Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983) .................................................................................. 20

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 5, 6

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .................................................................................. 14

*Yang v. Focus Media Holding Ltd.*,
    No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............. 6

## Statutes

15 U.S.C. § 78u-4 ..................................................................................... 19, 27, 28

## Rules

Fed. R. Civ. P. 23 .............................................................................................. passim

## Other Authorities

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).. 24

*Manual for Complex Litigation (Fourth)* .............................................................. 20, 26

v

## I.  INTRODUCTION

Lead Plaintiff Robert Patron ("Lead Plaintiff") submits this memorandum in support of the Stipulation and Agreement of Settlement dated June 8, 2020 ("Stipulation"), filed with the Court herewith. Lead Plaintiff and Defendants Kevin M. Dotts and Keith Soldan ("Defendants"), along with former Defendant Matthew Rosen (Defendants and Rosen are the "Settling Defendants," and together with Lead Plaintiff, the "Parties") have reached a proposed settlement of this securities class action ("Settlement"). Lead Plaintiff seeks an order: (1) preliminarily approving the Settlement as fair, reasonable, and adequate; (2) preliminarily certifying a Settlement Class; (3) preliminarily approving the plan of allocation; (4) preliminarily approving the notice; and (5) establishing a schedule for the steps necessary to seek final approval of the Settlement. Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation.

The Settlement recovers $800,000 for Settlement Class Members, representing approximately 12.8% of estimated class-wide damages. This result is in line with the median recovery in other securities class actions alleging losses of a similar magnitude.  Courts recognize that litigating securities class actions is inherently difficult and uncertain. This case is no different. Not only does Lead Plaintiff face significant challenges proving liability, Defendants' insurance policy - limited to begin with – informed the Parties that that it intended to disclaim coverage. Thus, there is no guarantee that Lead Plaintiff would be able to collect even if Lead Plaintiff were to prevail at trial.  Ordinarily, in securities class actions the company is also named as a defendant. This was not the case here, as the company, Fusion Connect, Inc. ("Fusion"), was in bankruptcy, and thus removing a possible source of funding.  The Court should find that the Settlement, which recovers 12.8% of damages, warrants preliminary approval.

1

The Court should also preliminarily certify a Settlement Class. This is a typical securities class action of the type that courts consistently certify for settlement purposes. Lead Plaintiff and Lead Counsel have adequately represented the Class to secure the Settlement despite the real risk of no potential recovery. The Court should also approve the Plan of Allocation because it treats all Settlement Class Members equally and does not show preferential treatment to Lead Plaintiff. Finally, the Court should approve the notice because both its form and content satisfy all applicable requirements.

The Court should grant preliminary approval to permit notice to the Class, which will allow it to consider the Settlement on a fuller record at a final approval hearing.

## II. PROCEDURAL HISTORY

This case was filed on June 7, 2019 in this Court, alleging violations of the federal securities laws against Fusion senior executives Matthew D. Rosen ("Rosen"), Kevin M. Dotts ("Dotts"), and Keith Soldan ("Soldan").  Dkt. # 1.  Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), Mr. Patron timely moved to be appointed Lead Plaintiff. Dkt. # 8. The Court granted his motion on July 23, 2019. Dkt. # 27. Mr. Patron then further investigated the claims in this action by, among other things, speaking to former Fusion employees and retaining an accounting expert.  Lead Plaintiff filed an amended complaint (the "Complaint") on December 6, 2019.  Dkt. # 40.  The Complaint does not name Rosen as a defendant.  On January 21, 2020, Defendants timely filed their motion to dismiss the Complaint.  Dkt. # 44.

## III. SETTLEMENT DISCUSSIONS

Lead Plaintiff initiated settlement discussions on December 12, 2019.  The Parties agreed to a mediation before Jed Melnick of JAMS, an experienced mediator of securities class actions. The mediation took place on March 10, 2020, with the Parties and Defendants' insurer exchanging detailed mediation briefs in the weeks prior to the mediation.  The Parties did not arrive at a

resolution at the mediation. Nevertheless, the Parties, with the assistance of Mr. Melnick, continued settlement negotiations in the days following the mediation. Ultimately, Mr. Melnick issued a Mediator's Proposal, which the Parties accepted.

## IV. FACTUAL BACKGROUND

Defendants Dotts and Soldan were the CFO and VP of Corporate Finance & Accounting at Birch Communications Holdings, Inc. ("Birch"). Dkt. # 40, at ¶¶22,23. On May 10, 2018, Fusion announced via a Form 8-K file with the U.S. Securities and Exchange Commission ("SEC") that it had acquired Birch. *Id.* ¶33. Included in Fusion's 8-K submission were Birch's financial statements for the 2017 fiscal year. *Id.* ¶34. As part of the acquisition, Dotts became the CFO of Fusion, and Soldan became the VP of Finance at Fusion. *Id.* ¶¶22,23.

Subsequent to its acquisition of Birch, Fusion issued two quarterly reports – for the second quarter of 2018 ("Q2 2018") and third quarter of 2018 ("Q3 2018") – that included the financial results of the combined Birch-Fusion entity. *Id.* ¶¶37, 40. Dotts signed the Q2 2018 results; Soldan signed the Q3 2018 results. *Id.* ¶¶38, 40.

On April 2, 2019, Fusion announced that Birch's 2017 financials, and Fusion's Q2 2018 and Q3 2018 financial results may no longer be relied on because they understated expenses by material amounts. *Id.* ¶43. Fusion attributed the understatement of expenses to the Birch subsidiaries that Fusion acquired. *Id.*

On June 3, 2019, Fusion filed for Chapter 11 bankruptcy. *Id.* ¶49.

## V. THE SETTLEMENT'S TERMS

### A. Stipulation

The Settlement resolves claims of a class of investors who purchased Fusion common stock between May 11, 2018 and April 2, 2019, both dates inclusive ("Settlement Class"). Defendants, officers and directors of Fusion and Birch, and certain persons connected to them are

excluded from the Class. Defendants will cause $800,000 ("Settlement Amount") to be paid to the Settlement Fund to settle the Settlement Class's claims.

In exchange for the Settlement Amount, Settlement Class Members will release the Settling Defendants and Fusion's insurance carriers from the Settlement Class Claims, which consist of:

> any and all claims, rights, demands, suits, liabilities, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, under federal, state, local, foreign law, or any other law, rule, or regulation, both known and Unknown Claims alleged or which could have been alleged by Lead Plaintiff or Settlement Class Members in the Action against the Settling Defendants or against any other of the Released Parties, or in any court of competent jurisdiction or any other adjudicatory tribunal, that arise out of, are based upon, in any way related to, or are in consequence of any of the facts, allegations, transactions, matters, events, disclosures, non-disclosures, occurrences, representations, statements, acts, omissions, or failures to act that were involved, set forth, or referred to in any of the complaints filed in the Action, or that otherwise would have been barred by res judicata had the Action been fully litigated to a final judgment; *and* (ii) relate to the purchase or sale of Fusion common stock during the Class Period. Provided, however, that Settlement Class Claims do not include (i) any claims relating to the enforcement of the Settlement, or (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

Stipulation, ¶1.34.

### B.  Confidential Supplemental Agreement

The Stipulation permits Settling Defendants to terminate the Settlement if a certain proportion of shares eligible to participate in the Settlement are validly excluded by their beneficial owners pursuant to the Settlement's terms. The exact proportion of shares is set out in a confidential supplemental agreement.

### C.  Award of Attorneys' Fees

As disclosed in the Notice, the Settlement allows Lead Counsel to seek fees of up to 28% of the Settlement Amount.

4

## VI. ARGUMENT

### A.  The Court should approve the Settlement

Courts recognize that public policy strongly favors settlements to resolve disputes, especially in complex class actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").  Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(2) provides:

> (2)    *Approval of the Proposal.*  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

## B.  Lead Plaintiff and His Counsel Have Adequately Represented the Class

Lead Plaintiff has diligently prosecuted this Action on the Class's behalf, including conducting a thorough investigation prior to filing the Complaint.  The investigation consisted of, among other things, interviews with numerous former Fusion and Birch employees, retaining an accounting expert, and performing an exhaustive review of Fusion's public filings. Lead Plaintiff zealously negotiated the settlement on behalf of the Class at the mediation and in the weeks following the mediation, ultimately achieving a settlement that is in line with median recoveries in similar-sized securities class actions, despite the numerous obstacles that this case presents.

## C.  The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014).

Moreover, Courts recognize that the opinion of experienced and informed counsel supporting a settlement is entitled to considerable weight. *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (finding that "it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight"). Counsel for each

party is experienced and thoroughly familiar with the factual and legal issues. Lead Counsel believes that the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

The negotiations were at arm's length. The Parties participated in a full-day mediation before an experienced neutral, Jed Melnick of JAMS. Even so, the mediation did not immediately result in a settlement. Agreement was only reached in the week after the mediation as a result of a mediator's proposal. The settlement, reached after a mediation and informed negotiation between counsel, was fair and not a product of fraud, collusion, or abandonment of the interests of the Class.

Lead Counsel was armed with enough information to evaluate the Settlement's benefits and drawbacks. "[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotations omitted). Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). Rather, "[t]he pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011). Before agreeing to the Settlement, Lead Counsel conducted extensive investigation and research into the merits of the Action, consulted with experts who estimated the amount of damages suffered by the Class, interviewed numerous former Fusion and Birch employees, reviewed in detail several years' worth of Fusion SEC filings, press releases, and other public statements, and monitored Fusion's bankruptcy proceeding and reviewed all pertinent filings in Fusion's bankruptcy proceeding. Lead Plaintiff also benefited from having seen Defendants' motion to dismiss and the arguments raised therein. Thus, Lead Counsel thoroughly examined

the impact of Defendants' alleged conduct on Class Members and acted diligently to negotiate the Settlement.

### D. The Relief Provided to the Class Is Adequate

#### 1. The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

To preliminarily approve the Settlement, the Court must determine that it will likely be able to finally approve the Settlement. Fed. R. Civ. Proc. 23(e)(1)(B). "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14CV7539MKBCLP, 2019 WL 5204809, at *3 (E.D.N.Y. Oct. 15, 2019)

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit, set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In weighing these factors, courts recognize that settlements require significant compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement."). It is not possible to evaluate the second factor, the reaction of the class to the settlement, at this time because notice of the Settlement has not yet been disseminated. Lead Plaintiff, however, supports the Settlement.

8

### a.   The Complexity, Expense, and Likely Duration of the Litigation

Securities class actions are inherently complex, and this one is no exception.   The accounting issues implicated in this case require reports and testimonies from accounting experts. A financial expert will also be needed at the class certification stage to evaluate market efficiency and price impact.   Additionally, expert testimony is also needed to prove loss causation and disaggregate any confounding factors that might have caused Fusion's stock to drop on April 2, 2019.

The Settlement was reached shortly after Defendants filed their motion to dismiss. Without a Settlement, even if Lead Plaintiff survives Defendants' motion to dismiss, litigating the case through discovery to summary judgment, and then to trial, may take years.

Indeed, if the Settlement was not reached, the Parties would have to incur substantial costs and engage in prolonged litigation through summary judgment, trial and if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, expert reports, and expert testimony would be significant and may be in the several hundred thousand dollar range at minimum for Lead Plaintiff. Reaching this Settlement now not only guarantees an immediate recovery for the Settlement Class, but also by keeping expenses lower, the Settlement Class Members will most likely be able to recover more now rather than have part of an eventual settlement or verdict being allocated to paying for the expenses associated with protracted litigation.

Accordingly, the complexity, expense, and duration of the litigation supports preliminary approval of the Settlement.

### b.   The Stage of the Proceedings and the Amount of Discovery Completed

As discussed above, Lead Plaintiff was able to conduct a thorough and informed

investigation. Although the Parties did not engage in formal discovery, by thoroughly investigating the case and working with his financial consulting experts, Lead Plaintiff had the information needed to evaluate the Settlement. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### c.  The Risk of Establishing Liability and Damages

Securities cases in general are risky to undertake given the PSLRA's heightened pleading standards and discovery stay.  Having reviewed Defendants' motion to dismiss, Lead Plaintiff is cognizant of the very real risk that this case could be dismissed, leaving the Class with nothing. Even if Lead Plaintiff were to survive Defendants' motion to dismiss, Lead Plaintiff would need to gather enough proof to survive summary judgment. If Lead Plaintiff survived summary judgement, Lead Plaintiff would then have to prove falsity, materiality, and scienter to a jury's satisfaction. If Lead Plaintiff won at trial, he would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment.

Lead Plaintiff would also have encountered loss causation defenses at summary judgment, as well as at trial. Lead Plaintiff would have had to disaggregate the portion of the alleged price decline that arose from the disclosure that corrected the fraud alleged by Lead Plaintiff from those that pertained to other information disclosed on the same day. *See*, *e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why

10

the disclosure on page 8 – as opposed to all other information in the extended 12 page release – caused the price decline"). Here, Fusion's April 2, 2019 disclosure not only revealed the understated expenses, but also disclosed that Fusion was defaulting on a loan.    Thus, disaggregating the impact of the corrective information from other adverse news released at the same time would prove challenging and would likely significantly lower damages.

### d.  The Risks of Maintaining the Class Action Through Trial

To be entitled to class certification, Lead Plaintiff must show that common issues predominate over individual issues. To do so, Lead Plaintiff must show that Fusion common stock traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements. Defendants would have been permitted to rebut the presumption by showing that the false statements did not have an impact on Fusion's stock price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014).

Certification of classes of equity securities remains the norm, and if Fusion were a large public company, the risk that a class would not be certified would be low. But Fusion is a small, thinly-traded, and less closely followed company. Courts regularly deny class certification in cases involving such small companies.

### e.  The Ability of Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund

In securities class actions, plaintiffs primarily look to the company defendant for settlement funds.  Here, though, Fusion was in bankruptcy and is therefore not a defendant. And while Defendants are ostensibly covered by Fusion's Directors & Officers insurance, the amount is limited, and the insurer has indicated that it intended to disclaim coverage because the acts at issue in this litigation pre-dated Defendants' tenure at Fusion.

11

Despite these limitations on Defendants' resources, the Stipulation provides for the Settlement Amount of $800,000 to be paid into the Settlement Fund. Lead Plaintiff retained a financial consultant, who estimated total damages in this case to be $6.23 million. Accordingly, the $800,000 recovery represents 12.8% of damages. This compares favorably to median recoveries in securities class actions alleging similar magnitude of damages. As such, the settlement falls well within the range of possible approval. *See*, Cornerstone Research, Securities Class Action Settlement 2019 Review and Analysis, at 6 (noting that in 2019, securities class actions with less than $25 million in damages settle for a median of 12.8% of damages).[1]

### E.  The Proposed Method for Distributing Relief Is Effective

As demonstrated below at 21-22, the method of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation ("Plan") governs how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiffs' damages consultant.

### 1.  Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intend to seek an award of attorneys' fees of no more than 28% of the Settlement Amount, or $224,000, and recover actual litigation expenses in an amount not to exceed $35,000. This fee request is lower than other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50

---

[1] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis

million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014).

Further, as explained in the proposed notice, Lead Plaintiff intends to request an amount not to exceed $10,000 pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with his representation of the Class.

### 2.   The Parties Have No Side Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement.  The Parties have agreed to a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Fusion common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation ¶2.12. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of Class Members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same).

### 3.   There Was No Preferential Treatment; The Plan of Allocation Is Designed to Treat Class Members Equitably

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013).  The Plan is fair, reasonable and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL

13

5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017). The Plan, set out in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), attached as Exhibit A-1 to the proposed preliminary approval order, explains how the Settlement proceeds will be distributed among Authorized Claimants.

The Plan provides that each Class Member will receive the same per-share amount. Lead Plaintiff and all other Class Members will receive their payment pursuant to the same formula.

## VII.    THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON CERTIFICATION TO PROVIDE NOTICE TO THE PUTATIVE SETTLEMENT CLASS

In preliminarily approving a proposed settlement, this Court should preliminarily determine that class treatment is appropriate. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007).

The Second Circuit has long acknowledged the propriety of certifying classes solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed Settlement Class is proper for settlement purposes. *See Amchem,* 521 U.S. at 620; *Manual for Complex Litigation* (Fourth) § 21.632. To certify a class, the Court must determine whether four threshold requirements of Federal Rule of Civil Procedure 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action meets these requirements.

### A. Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-245 (2d Cir. 2007). Indeed, numerosity is presumed when the class consists of 40 members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Although the exact number of Settlement Class Members is not known, courts generally presume that the numerosity requirement has been satisfied in a securities class action when "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, Fusion common stock was publicly traded with about 6.32 million shares damaged during the end of the Class Period. Thus, numerosity is met.

### B. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide resolution—which

15

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015), 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)).

Courts will usually find commonality if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Securities class actions are particularly well suited to class treatment. *Id.* at 341 (noting that the "commonality requirement has been applied permissively by courts in the context of securities fraud litigation."). Accordingly, commonality is satisfied.

## C.  Typicality

Rule 23 (a)(3) requires that the representative's claim be typical of those of the members of the class. Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux,* 987 F.2d at 936-37.

Here, Lead Plaintiff's claims are similar to those of the other members of the Settlement Class. Just like the other members of the proposed Settlement Class, Lead Plaintiff purchased Fusion shares at prices that were allegedly artificially inflated by Defendants' false and misleading statements, and Lead Plaintiff was harmed in the same way when the truth emerged. Lead Plaintiff's claims stand or fall with those of the Settlement Class, and thus, they are typical.

16

### D. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement requires a two-pronged inquiry: *first*, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; *second* the plaintiff's counsel must be qualified to represent the class. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), 291 (2d Cir. 1992). Plaintiffs are adequate if their interests do not conflict with those of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Pursuant to Rule 23(g), adequacy of lead counsel is now considered separately from the determination of the adequacy of the lead plaintiff. In any event, both prongs of the adequacy requirement are satisfied here.

#### 1. Adequacy of the Proposed Class Representatives

Lead Plaintiff has no interests antagonistic to those of the members of the Settlement Class and faces no unique defenses different from those the Settlement Class faces. Lead Plaintiff, on his own behalf and on behalf of all Settlement Class Members, seeks to recover from Defendants damages caused by Defendants' alleged misconduct. Lead Plaintiff's claims rise or fall alongside those of all other Settlement Class Members.

#### 2. Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622 (S.D.N.Y. 2012).

17

Lead Counsel, The Rosen Law Firm, P.A., has extensive experience prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including in the Southern District of New York. The firm and its attorneys have achieved significant results for their clients and for certified investor classes. Courts have consistently found Lead Counsel to be well-suited as class counsel in securities class actions.

Lead Counsel thoroughly investigated the claims in this action to file the Complaint, and then judiciously reached a Settlement that recovers $12.8% of damages despite having no company defendant and with the D&O insurer disclaiming coverage. Lead Counsel should be preliminarily appointed as counsel to the Settlement Class.

### E.  Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Here, Lead Plaintiff seeks to certify a class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Lead Plaintiff satisfies the predominance and superiority criteria of Rule 23(b)(3).

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866,

18

at *18 (E.D.N.Y. July 18, 2013). Here, if every class member brought an individual action, each plaintiff would have to prove that every omission or misrepresentation was materially false or misleading for the same reasons, and would have to prove the same facts to show that Defendants made their false or misleading statements with scienter. Thus, this case is an example of the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem Products, Inc.*, 521 U.S. at 625.

> Factors relevant to a finding of superiority include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The Court should balance the merits of certifying a class against other possible methods of adjudication. Without class actions, investors who have been defrauded by securities law violations but whose losses do not run into several millions of dollars would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *In re Marsh & McLennan Companies, Inc. Securities Litigation*, 2009 WL 5178546, at *12. *See also Amchem Products, Inc.*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective

19

strength to bring their opponents into court at all."). And if individuals *do* have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

Thus, a class action is the superior method of adjudication and satisfies Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). The Court should preliminarily determine that class treatment is appropriate to permit notice to the Settlement Class.

### VIII. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* § 21.312. To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314). In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The Proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached as Exhibit A to the Stipulation, requires Lead Counsel, within twenty-eight (28) calendar days of the Court's order preliminarily approving the Settlement, to provide notice to Class Members through mailing of the proposed Postcard Notice to all identifiable Settlement Class members, substantially in the form annexed as Exhibit A-4 to the Preliminary Approval Order, together with a copy of the Proof of Claim and Release, substantially in the form annexed as Exhibit A-2 to the Preliminary Approval Order, to be promptly mailed by first-class mail to each such Settlement Class members whose name and address are reasonably available. Twenty-eight (28) calendar days after entry of the Preliminary Approval Order, Lead Counsel shall cause a Summary Notice, substantially in the form annexed as Exhibit A-3 to the Preliminary Approval Order, to be published over the internet on *GlobeNewswire* and *Investor's Business Daily*.

The Notice meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). The proposed Notice, attached to the Preliminary Approval Order as Exhibit A-1, provides detailed information concerning: (a) the rights of Settlement Class Members, including the right to accept, object, or opt out of the Settlement; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Lead Counsel and an incentive award to Lead Plaintiff; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding Notice to those persons for whom the nominees hold or held shares in street name. Additionally, the proposed Notice explains the

21

procedures and deadlines for opting out of the Settlement or submitting objections or other comments.

Further, the Notice includes the disclosures the PSLRA mandates, as it: states the amount of the Settlement on both an aggregate and average per share basis; provides a brief statement explaining the reasons why the Settling Parties are proposing the Settlement; and states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and provides the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a) (7).

The proposed Notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Thus, the proposed method of notice described above satisfies the requirements of due process as well as the PSLRA.  *See*, *e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).

## IX. PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| EVENT | DEADLINE FOR COMPLIANCE |
|---|---|
| Date for Settlement Hearing. | Approximately 120 calendar days from entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 6.) |
| Defendants to provide a list of record owners of Fusion common stock | No later than fourteen (14) business days after the entry of this Order (Preliminary Approval Order ¶14). |
| Mailing of Notice and Proof of Claim and Release to record owners of Fusion common stock | No later than 28 calendar days after the entry of this Order (Preliminary Approval Order ¶17). |

22

| Publication of Summary Notice. | No later than fourteen (28) calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶16). |
|---|---|
| Deadline for filing Proofs of Claim. | No later than twenty-one (21) calendar days prior the Settlement Hearing. (Preliminary Approval Order ¶ 21(a)). |
| Filing deadline for requests for exclusion. | Twenty-one (21) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶23). |
| Date for Lead Plaintiff to file papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Twenty-eight (28) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶30). |
| Filing deadline for objections. | Twenty-one (21) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 27). |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 31). |

This schedule is similar to that used in other class action settlements and provides due process for the Settlement Class Members of their rights concerning the Settlement.

The Court should schedule the Settlement Hearing for a date approximately 120 calendar days after entering the Preliminary Approval Order to allow enough time: (i) for the Claims Administrator to mail the Notice and Proof of Claim and Release and publish the Summary Notice; (b) for Settlement Class Members to file claims, request exclusion, or object to the Settlement; and (c) for Lead Counsel to file the motion in support of final approval of the Settlement and the Plan, and for application for attorneys' fees and reimbursement of expenses.

## X. CONCLUSION

Counsel for Lead Plaintiff and Defendants have reached this Settlement following extensive discussions and arm's-length negotiations.  At this juncture, the Court need not answer

the ultimate question: whether the Settlement is ultimately fair, reasonable, and adequate.  At this time, the Court is merely being asked to permit Notice of the terms of the Settlement to be sent to the Settlement Class, and to schedule a hearing to consider any views expressed by Settlement Class Members, the fairness of the Settlement, and Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses. *Moore*, supra, §23.83[1], at 23-336.2 to 23-339.

For all of the above-stated reasons, Lead Plaintiff respectfully requests that the Court: (1) preliminarily certify the Settlement Class for purposes of the Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of Notice to the Settlement Class; and (4) set a Settlement Hearing date for final approval of the proposed Settlement.

Dated:  June 10, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim (PK 9384)
Laurence Rosen (LR 5733)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

*Lead Counsel for Lead Plaintiff*
*and the Class*

**WOLF HALDENSTEIN**
**ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114

*Additional Counsel for Lead Plaintiff*
*and the Class*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day June 2020, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES** was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim
Phillip Kim

25