**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Lead Plaintiff
and the Class*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PATRON, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>KEVIN M. DOTTS and KEITH SOLDAN<br><br>    Defendants. | Case No. 1:19-cv-05362-PGG<br><br><br>CLASS ACTION |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION................................................................................................. 1

II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT ................................. 2

    A.    Procedural History................................................................................. 2

    B.    The Settlement...................................................................................... 2

        1.    Cash Consideration and Release ................................................. 3

        2.    Notice to the Settlement Class ................................................... 3

        3.    Exclusion and Objection Deadline.............................................. 4

        4.    The Plan of Allocation ............................................................... 4

III.  ARGUMENT...................................................................................................... 5

    A.    The Court Should Approve the Settlement ........................................... 5

        1.    Certification of the Settlement Class is Appropriate .................... 5

        2.    The Settlement is Fair, Reasonable, and Adequate....................... 5

            a.    Continued Litigation Would be Complex, Expensive, and Protracted ....... 7

            b.    The Lack of Objections and Exclusion Requests Support Final Approval  9

            c.    Lead Plaintiff had Sufficient Information to Make Informed Decision about Settling this Action.......................................................................... 10

            d.    Lead Plaintiff Faced Significant Risks in Establishing Liability and Damages.............................................................................. 11

            e.    The Risks of Maintaining the Class Action Through Trial....................... 14

            f.    The Ability of Defendants to Withstand Greater Judgement.................... 15

            g.    The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation .......... 15

            h.    The Settlement Resulted From Arm's-Length Negotiations .................... 17

    B.    The Court Should Grant Final Approval of the Plan of Allocation............... 19

    C.    Notice to the Settlement Class Complied with Rule 23 and Due Process ...... 20

    D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors....................... 22

        1.    The Proposed Method for Distributing Relief is Effective ........................... 22

        2.    Attorneys' Fees ................................................................................... 23

3.      The Parties Have No Other Agreements Aside From Opt-Outs.................... 23

**IV.  CONCLUSION** ................................................................................................................ **24**

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alleyne v. Time Moving & Storage Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ...................................................................................... 18

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ................................................................................... 7, 20

*Baker v. SeaWorld Entm't, Inc.*,
   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 22

*Burns v. FalconStor Software, Inc.*,
   No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ................................ 16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................... 6, 11, 15

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................ 7, 22

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................................................... 18

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .................................................................................................. 5, 12

*Fishoff v. Coty Inc.*,
   No. 09 CIV. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................. 12

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ....................................................................................... 17

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................. 24

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................ 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................................... 22

*In re Agent Orange Prod. Liab. Litig.*,
   611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................................................... 17

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................... 7

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................................... 9

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...................... 7, 8, 12, 15

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................................ passim

*In re Charter Commc'ns, Inc., Sec. Litig.*,
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005)................................ 16

*In re China Sunergy Sec. Litig.*,
  No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 16

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) .............................................................................................. 6

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................................................... 7

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..................................... 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................. 15

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016)..................................................................................... 23

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 12, 13, 14, 19

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................. 10, 19

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  No. 13CIV214RMBRLE, 2017 WL 2559230 (S.D.N.Y. May 22, 2017) ............................... 19

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) .................................................................................. 11, 20

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...................... 14, 15, 19

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ..................................... 10

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010).............................................................. 13, 17, 18

*In re Salomon Inc Sec. Litig.*,
   No. 91 CIV. 5442 (RPP), 1994 WL 265917 (S.D.N.Y. June 16, 1994) .................................. 18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 17, 18

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985).......................................................................... 11

*In re Warner Commc'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986)..................................................................................... 6

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................ 12, 14

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ........................................................................... 23

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009).................................................................... 13

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................... 8

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993)........................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................ passim

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982).................................................................................... 5

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......................... 18

## Statutes

15 U.S.C. § 78u-4(a)(4) ........................................................................................... 23

15 U.S.C. § 78u-4(a)(7) ........................................................................................... 21

**Rules**

Fed. R. Civ. P. 23.......................................................................................................... passim

**Other Authorities**

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009)............... 23

Manual for Complex Litigation, Third, § 30.42 (1995)................................................................. 17

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Robert Patron ("Lead Plaintiff") respectfully submit this memorandum of law in support of his motion for final approval of the proposed class action settlement ("Settlement"), as set forth in the Stipulation of Settlement dated June 8, 2020 ("Stipulation") (ECF No. 50).[1]

## I.    INTRODUCTION

Lead Plaintiff and the Settling Defendants have agreed to settle this Action for $800,000 in cash by the terms stated in the Stipulation. In accordance with the Stipulation, the Settling Defendants have deposited the Settlement Amount into the Escrow Account, which has been established to hold the Settlement Fund.

The Settlement satisfies all the relevant legal standards for approval pursuant to Rule 23 of the Federal Rules of Civil Procedure, and is eminently fair and reasonable in light of the considerable risks and expenses attendant to continued litigation. The Settlement is the product of extensive, good faith, arm's-length negotiations between the parties and reflects a compromise based on Lead Plaintiff and Lead Counsel's evaluation and knowledge of the strengths and weaknesses of the case. As a result of these efforts, Lead Plaintiff believes that the proposed Settlement is fair, reasonable, and adequate to the Settlement Class. Lead Plaintiff therefore respectfully requests that the Court: (a) certify the Settlement Class for purposes of the Settlement; (b) grant final approval of the proposed Settlement; and (c) approve the Plan of Allocation.

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation. Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

1

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

This Action commenced on June 7, 2019, when plaintiff Grand Slam Master Fund filed a putative class action against the Settling Defendants alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934. ECF No. 1.

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Robert Patron timely moved to be appointed Lead Plaintiff. ECF No. 15. The Court granted his motion, and appointed his choice of counsel, The Rosen Law Firm, P.A. ("Rosen Law"), as Lead Counsel. ECF No. 27.

On December 6, 2019, Lead Plaintiff filed the Amended Class Action Complaint ("Complaint") against Defendants. ECF No. 40. On January 21, 2020, Defendants moved to dismiss the Complaint. ECF No. 44.

### B.    The Settlement

On March 10, 2020, while Defendants' motion to dismiss was pending, the Settling Parties attended a full-day mediation session with Jed Melnick of JAMS, a nationally-recognized mediator with substantial experience mediating securities fraud class actions. While no agreement was reached by the conclusion of the mediation, the Settling Parties continued their settlement discussions in the following weeks with the assistance of Mr. Melnick. The Settling Parties ultimately accepted Mr. Melnick's "mediator's proposal" to settle the Action for $800,000, and on April 1, 2020, memorialized the key terms of the agreement in a term sheet.

The Settlement Class includes all persons or entities who purchased the common stock of Fusion Connect, Inc. ("Fusion") during the period from May 11, 2018 to April 2, 2019, both dates inclusive.[2]

Lead Plaintiff filed his motion for preliminary approval of the proposed Settlement on June 10, 2020. ECF Nos. 50-52. The Court granted preliminary approval of the Settlement on January 21, 2021 (the "Preliminary Approval Order"). ECF No. 55.

### 1.      Cash Consideration and Release

The Settlement provides for a cash payment of $800,000 to resolve the Settlement Class's claims. If the Court grants final approval of the Settlement, Lead Plaintiff, on behalf of the Settlement Class Members, will forever release all claims against the Settling Defendants that were alleged or could have been alleged in this Action.

### 2.      Notice to the Settlement Class

Pursuant to the Preliminary Approval Order, the Postcard Notice was mailed to potential Settlement Class Members, brokers, and nominee holders. Declaration of Yu Shi ("Shi Decl."), Exhibit 1 (Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Evans Decl.") ¶¶2-8. The Postcard Notice advised potential Settlement Class Members how to access or obtain copies of the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), which provided a detailed description of the terms of the Settlement and Plan of

---

[2] Excluded from the Settlement Class are the Settling Defendants, any officer or director of Fusion or Birch Communications Holdings, Inc. during the Settlement Class Period, and the successors, heirs, and members of immediate families, assigns, and any entity in which any of the Settling Defendants, or any person excluded under this subsection, has or had a majority ownership interest at any time. Also excluded from the Settlement Class are those Persons who (i) suffered no compensable losses, (ii) submits a valid request for exclusion from the Settlement Class.

Allocation. *Id.*, Exs. A (Postcard Notice) and C (Long Notice). The Postcard Notice also informed potential Settlement Class Members that Lead Counsel would seek a fee award not to exceed 28% of the Settlement Amount, recovery of actual litigation expenses not to exceed $35,000, and an award to Lead Plaintiff of up to $10,000, and that objections to any aspect of the Settlement or to the fee and expense request are due no later than April 29, 2021. Evans Decl., Ex. A.

As of the date of this writing, the Claims Administrator has mailed 2,917 copies of the Postcard Notice to potential Settlement Class Members. Evans Decl. ¶6. The Claims Administrator also posted the Long Notice and Proof of Claim and Release Form ("Claim Form") on its website at https://www.strategicclaims.net/fusion-connect-inc-securities-litigation. *Id.* ¶11. The website also provides a link for online claim filing and lists important deadlines. *Id.* Additionally, the Claims Administrator disseminated the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") electronically on the *GlobeNewswire* and in print in the *Investor's Business Daily*. *Id.* ¶9.

### 3.      Exclusion and Objection Deadline

Requests for exclusion must be postmarked by April 29, 2021.  To date, there has been only one request for exclusion - from an investor who did not purchase any Fusion stock during the Settlement Class Period and is therefore not a Settlement Class Member. Evans Decl. ¶12. There have been no exclusion requests from Settlement Class Members. Objections to the Settlement must be received by the Court and counsel by April 29, 2021. As of this writing there have been no objections to any aspect of the Settlement. *Id.* ¶13; Shi Decl. ¶19.

### 4.      The Plan of Allocation

The Long Notice describes the Plan of Allocation. Evans Decl., Ex. C at 5-7. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement

Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation. Shi Decl. ¶20. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.,* losses from sales made prior to alleged revelation of the truth. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation stablishes a formula which calculates Settlement Class Members' recognized losses based on the date and price at which the Settlement Class Member purchased and sold Fusion stock.

## III.   ARGUMENT

### A.   The Court Should Approve the Settlement

#### 1.   Certification of the Settlement Class is Appropriate

In its Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied". ECF No. 55, at 2 (finding that each of the six factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, for the reasons stated in Lead Plaintiff's Preliminary Approval Brief (ECF No. 52), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

#### 2.   The Settlement is Fair, Reasonable, and Adequate

As a matter of public policy, courts favor settlements, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), especially in complex class actions like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Federal Rule of Civil Procedure 23(e), a court must determine whether the settlement, taken as a

whole, is fair, reasonable and adequate, and was not the product of collusion. *Id.* at 116. A proposed class action settlement enjoys a presumption of fairness where, as here, it resulted from arm's-length negotiations conducted by capable counsel who are experienced in class action litigation arising under the federal securities laws. *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

In weighing these factors, courts recognize that settlements require give and take between the negotiating parties. Thus, courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").

The proposed Settlement is fair, reasonable, and adequate under the *Grinnell* factors and the Court should approve it.

> ### a. Continued Litigation Would be Complex, Expensive, and Protracted

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have long recognized that securities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Lead Plaintiff could have faced difficulty in establishing falsity, materiality and scienter as required under the federal securities laws. Additionally, substantial expert testimony would be necessary regarding loss causation and damages. Shi Decl., ¶¶22-32.

Without the Settlement, this Action would have required resolution of Defendants' motion to dismiss, extensive fact and expert discovery as well as, litigating a class certification motion, summary judgment motions, and *Daubert* motions, followed by proving Lead Plaintiff's claims at trial, post-trial motions, and appeals. Throughout each litigation phase, Lead Plaintiff would undoubtedly have faced a robust defense from Defendants' experienced counsel. *See In re Alloy,*

7

*Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"). As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner*, 2006 WL 903236, at *8.

Even if Lead Plaintiff were to defeat Defendants' motion to dismiss, overcome any summary judgment motions, *and* win at trial – none of which are guaranteed in light of the strong defenses that Defendants have raised - the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Moreover, in securities class actions, plaintiffs typically look to the company defendant for settlement funds. Here, however, the company (Fusion) filed for bankruptcy and is therefore not a defendant. Insurance coverage was the only practical source of recovery. While Defendants were ostensibly covered by Fusion's Directors & Officers ("D&O") insurance, the amount is limited and would have been further depleted if this litigation were to continue. The D&O insurer also indicated that it intended to disclaim coverage because the acts at issue in this litigation pre-dated Defendants' tenure at Fusion and therefore are arguably not covered under the D&O policy. As such, there is a very significant risk that further litigation might yield a smaller recovery – or no recovery at all – several years in the future. *See*, *e.g.*, *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH),

2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). The Settlement eliminates the expense and delay of continued litigation, the depletion of existing resources for settlement funds, and the risk that the Settlement Class could receive no recovery.

### b. The Lack of Objections and Exclusion Requests Support Final Approval

The reaction of the class to a proposed settlement is a significant factor to weigh in considering its fairness and adequacy. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012); *see Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Am. Bank Note*, 127 F. Supp. 2d at 425 (noting "the lack of objections may well evidence the fairness of the Settlement").

The Notice was disseminated under Lead Counsel's supervision by the Court-appointed third-party claims administrator, Strategic Claims Services ("SCS"). Evans Decl. ¶2. In accordance with the Court's Preliminary Approval Order, SCS mailed 2,917 Postcard Notices to Settlement Class Members, brokers, and nominee holders. *Id.* ¶6. The Summary Notice was posted over *GlobeNewswire* and published in *Investor's Business Daily* on February 15, 2021. *Id.* at ¶9. The Long Notice and Claim Form were also available on SCS website, where Settlement Class Members can file their claims online. *Id.* at ¶11.

The deadline for Settlement Class Members to object to or request exclusion from the Settlement is April 29, 2021. To date, no objections have been received. Evans Decl. ¶13. While

there was one request for exclusion, it was from an individual who did not purchase any Fusion stock during the Settlement Class Period; as such, she is not a Settlement Class Member. *Id.* ¶12. Lead Plaintiff will address any further requests for exclusion or objections in his Reply.

The Settlement Class's favorable reaction supports approving the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that 34 requests for exclusion in response to the mailing of nearly 400,000 notices was a "minimal" number that "militates in favor of approving the settlement as be[ing] fair, adequate, and reasonable.").

Moreover, Lead Plaintiff, a sophisticated investor and attorney who actively supervised this litigation, believes that the Settlement confers the best possible result under the circumstances. Shi Decl., Ex. 5 (Patron Decl.) at ¶8.

### c.    Lead Plaintiff had Sufficient Information to Make Informed Decision about Settling this Action

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' *[sic]* causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, the parties "need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10; *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel

10

sufficiently well informed…however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

At the time of settlement, Lead Plaintiff and Lead Counsel understood the strengths and weaknesses of the claims and defenses asserted, and could make informed appraisals regarding the chances of success. Indeed, by the time the Settlement was agreed to, Lead Plaintiff and Lead Counsel had: (1) investigated the claims in this action to plead a detailed amended complaint, which required hiring private investigators to conduct interviews with former employees, hiring an accounting expert to analyze financial statements, and scouring public records; (2) consulted with loss causation and damages experts; (3) analyzed Defendants' motion to dismiss and evaluated the strength of Defendants' arguments; (4) prepared a detailed mediation statement and analyzed Defendants' mediation submissions, including submissions from Fusion's D&O insurer concerning the bases for potential denial of coverage; (5) attended a full-day mediation before Mr. Melnick and continued negotiations following the mediation. Thus, before entering into the Settlement, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of their case. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 312 (E.D.N.Y. 2006) (settlement approved where counsel had "a clear view of the strengths and weaknesses of the case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986)).

> **d.    Lead Plaintiff Faced Significant Risks in Establishing Liability and Damages**

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the

risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation," particularly where, as here, Defendants had credible defenses. *AOL Time Warner*, 2006 WL 903236, at *11. Securities fraud claims are subject to the heightened pleading standards of the PSLRA and Rule 9(b). In their motion to dismiss, Defendants credibly argue that the Complaint failed to adequately allege scienter under the stringent requirements of the PSLRA. Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 CIV. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd,* 634 F.3d 647 (2d Cir. 2011). Even if Lead Plaintiff's Complaint adequately *alleges* scienter (in addition to falsity and loss causation), Lead Plaintiff recognizes the difficulties of sustaining these elements through summary judgment and at trial. *AOL Time Warner*, 2006 WL 903236, at *11 (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial").

If the litigation had proceeded, Lead Plaintiff could have encountered significant causation and damages defenses. Lead Plaintiff must establish that it was the revelation of Defendants' misrepresentations that caused the stock drop, rather than other, non-fraud related factors. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "'the burden of proving'

12

that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *Global Crossing*, 225 F.R.D. at 459. Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *Id.* Indeed, Defendants would oppose any expert Lead Plaintiff retained with an equally well-credentialed expert expressing the opposite view. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 338-39 (E.D.N.Y. 2010) ("In such a 'battle of the experts,' the jury could well have been swayed by defendants' experts, finding that the plaintiffs were entitled to little or no recovery even if liability were established.").

Establishing damages in this case would be particularly difficult. Defendants would hire an expert to disaggregate the portion of the alleged price declines that arose from the disclosure of the understatement of expenses from other negative disclosures that occurred on the same day. For example, on April 2, 2019 - the date of the alleged corrective disclosure - Fusion not only disclosed the understated expenses at issue in this litigation, but also revealed that it was defaulting on a large loan. Defendants' expert would likely contend that the stock drop was primarily or entirely due to the disclosure of the loan default, which would significantly reduce or even eliminate damages. Lead Plaintiff's expert would need to demonstrate that the entirety of the stock drop was due to the disclosure of the understatement of expenses. Indeed, disaggregating the impact of the corrective information from all other news released at the same time would prove challenging and may significantly lower damages. *See, e.g., Police & Fire Ret. Sys. of City of Detroit v. SafeNet,*

13

*Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why the disclosure on page 8 – as opposed to all other information in the extended 12 page release – caused the price decline").

Therefore, even if liability were established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global*, 186 F. Supp. 2d at 365. If a jury were to accept Defendants' arguments, damages in this case could be greatly reduced or even eliminated. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### e.    The Risks of Maintaining the Class Action Through Trial

Although class certification was not briefed in this case, such motions bear significant risk and are expensive as they require expert testimony. Defendants would undoubtedly vigorously challenge class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. Indeed, Lead Plaintiff would need to retain an economics expert to opine that Fusion's stock traded on an efficient market, and that there was a common methodology to calculate class-wide damages. Defendants would most certainly engage an expert to contest Lead Plaintiff's expert. Even if a class were to be certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification

at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement," *Marsh & McLennan*, 2009 WL 5178546, at *6, because "even the process of class certification would have subjected Lead Plaintiff to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

### f. The Ability of Defendants to Withstand Greater Judgement

Even if Lead Plaintiff were able to overcome the significant risks described above and prevail at trial, there exists the very real risk that Defendants would be unable to satisfy any judgment.

As discussed *supra* (page 8), unlike typical securities class actions, there is no company defendant here that can provide a source of funds, as Fusion is not a defendant because it declared bankruptcy. Hence the most certain source of funding is Fusion's D&O insurance, which is limited to begin with and would have been exhausted if the litigation were to continue. Accordingly, there is a very significant risk that further litigation might yield a smaller recovery, or no recovery at all, several years in the future.

### g. The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized

sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario – assuming Lead Plaintiff overcomes all the obstacles noted above to establish liability and damages – the maximum recoverable damages are $6.23 million. Shi Decl. at ¶18. The Settlement, in the amount of $800,000, represents 12.8% of maximum recoverable damages. The 12.8% recovery compares favorably against the average class action securities fraud settlement. *See Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014) (citing *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) (noting that there has been an "average 5.5% - 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995," and concluding that these percentages are "well within the range of possible approval")); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses).

Cornerstone Research, an economic consulting firm, publishes annual analyses of securities class action settlements. It calculated that between 2011 and 2029, the median securities class action settlement in cases alleging Exchange Act claims with damages under $25 million recovers 16.8% of damages. Cornerstone Research, *Securities Class Action Settlements 2020 Review and Analysis (2021)* at 6, Fig. 5.[3] This means that for cases with less than $25 million in

---

[3]  *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last viewed on April 12, 2021).

damages, half of the settlements were for under 16.8% of damages. Moreover, the median settlement during that time period regardless of the size of damages was 4.9%. *Id.*

Indeed, Defendants have no economic incentive to enter into settlements unless they receive a discount on the value of the claims. Further, in a factually and legally complex securities class action lawsuit, responsible counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Courts recognize that "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Money in Settlement Class Members' pockets now is more valuable than a larger, speculative recovery that Settlement Class Members might obtain after years of litigation. Thus, the Settlement Amount is within the range of reasonableness, and favors approval of the Settlement.

### h.    The Settlement Resulted From Arm's-Length Negotiations

The experience and reputation of the parties' counsel who negotiated a settlement at arm's-length is entitled to great weight. *See, e.g., Wal-Mart*, 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel") (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *MetLife*, 689 F. Supp. 2d at 330 ("a strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel.") (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)). Courts recognize that "the opinion of experienced and informed counsel" supporting settlement "is entitled to considerable weight." *See*

17

*MetLife*, 689 F. Supp. 2d at 341 (quoting *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010)); *In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994) (judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"). Here, the settlement was the product of arm's-length negotiations between experienced and informed counsel, with the assistance of a well-respected and experienced mediator.

Lead Counsel have extensive experience prosecuting class actions and have successfully prosecuted securities class actions in courts throughout the country, including in the Southern District of New York. Shi Decl., Exhibit 5 (Rosen Law Firm Resume). Defendants, for their part, were represented by Dechert LLP, one of the largest and most respected law firms in the world with substantial experience defending securities class actions.

Similarly, there is a presumption of fairness when a settlement is reached with the assistance of a mediator. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *Telik*, 576 F. Supp. 2d at 576.

The Settling Parties participated in a mediation with the guidance of Mr. Melnick, a highly skilled and respected mediator with ample experience mediating securities class actions such as this one. Mr. Melnick's involvement supports the Settlement's fairness. *See e.g., Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly

supports a finding that negotiations were conducted at arm's length and without collusion."); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13CIV214RMBRLE, 2017 WL 2559230, at *7 (S.D.N.Y. May 22, 2017) (approving settlement where the settling parties engaged Mr. Melnick as a mediator, including an all-day mediation session with subsequent discussions and arm's-length negotiations among the parties with Mr. Melnick's involvement).

## B.        The Court Should Grant Final Approval of the Plan of Allocation

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270 (same). In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation is set forth in the Long Notice. *See* Evans Decl., Ex. C at 5-7. Lead Counsel developed the Plan of Allocation in consultation with a financial consultant with the objective of equitably distributing the Net Settlement Fund. Each eligible Settlement Class Member, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation. Lead Plaintiff, just like all other Settlement Class Members, will be subject to the same formulas for distribution. The Plan of Allocation recognizes differences in damages incurred by those who bought and sold their shares at different prices and times during the Settlement Class Period, reflecting different damages due to the purchase and sale prices and the amount of artificial inflation in Fusion common stock at the time of their transactions. Under the Plan of Allocation, a "Recognized Loss" will be calculated for each purchase of Fusion common stock during the Settlement Class Period for which adequate documentation is provided. *See In re Datatec Sys.,*

19

*Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at \*5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"); *In re Luxottica Grp. S.p.A. Sec. Litig.,*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

In sum, the Plan of Allocation recognizes that certain Settlement Class Members are differently situated based on the timing of their trades but does not discriminate between Settlement Class Members in the same position. Thus, the Plan of Allocation has a rational basis, it fairly compensates Settlement Class Members, and this Court should approve it.

### C.     Notice to the Settlement Class Complied with Rule 23 and Due Process

The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Pierson*, 607 F. App'x at 73. The Notice satisfied Fed. R. Civ. P. 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. The Notice also satisfies both Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and Fed. R. Civ. P. 23(e)(2)(C)(ii).

Both the substance of the Notice and the method of dissemination to potential members of the Settlement Class satisfies these standards. The Notice program was carried out by SCS, a nationally-recognized claims administrator. The Long Notice contains the information required by

20

Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the Settling Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Settlement Class Members' right to request exclusion from the Settlement Class and to object to the Settlement, the Plan of Allocation of or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members. The Notice also provides: instructions for submitting a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund and relevant deadlines; and the contact information for Lead Counsel and SCS.

SCS has mailed a total of 2,917 Postcard Notices which contains a description of the Action, the Settlement, information about Settlement Class Members' rights, and directs Settlement Class Members to a website for the Long Notice (Ex. A to Evans Decl.). SCS also caused the Summary Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* on February 15, 2021. *Id.* ¶9. SCS also established a settlement-specific website to provide members of the Settlement Class with information concerning the Settlement, all applicable deadlines, and copies of key documents including the Long Notice containing the Plan, Preliminary Approval Order, the Claim Form and the Stipulation. *Id.* ¶11. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.

The mailing of Postcard Notices to Settlement Class Members who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a

21

newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Entm't, Inc.,* No. 14CV2129-MMA (AGS), 2020 WL 818893, at \*2-\*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website); *City of Providence*, 2014 WL 1883494, at \*2.  Thus, the Notice procedures carried out here were more than sufficient.

### D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1.    The Proposed Method for Distributing Relief is Effective

As demonstrated in §III.C, *supra*, the method of the proposed notice and claims administration process are effective. The notice plan included direct mail Postcard Notice to all those who could be identified with reasonable effort, supplemented by the publication of the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Evans Decl. at ¶¶2-8. In addition, the Claims Administrator created a settlement-specific website and posted key documents there, including the Stipulation, Notice, Claim Form and Preliminary Approval Order. *See id.* ¶11. Settlement Class Members were also able to submit claims through the website.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how the Claims Administrator will calculate Settlement Class Members' claims and, ultimately, how it will distribute the Settlement Fund. Lead Counsel also worked with a financial consultant to formulate the Plan of Allocation.

### 2.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the memorandum of law in support of the motion for an award of attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, filed concurrently herewith, Lead Counsel seeks an award of attorneys' fees of 28% of the Settlement Amount and reimbursement of litigation expenses incurred. These requests, fully disclosed in the Notice, are in line with other settlements approved in the Second Circuit.

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order"). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).[4]

Lead Plaintiff also requests $10,000 pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with his efforts in stewarding this Action.

### 3.    The Parties Have No Other Agreements Aside From Opt-Outs

Fed. R. Civ. P. 23(e)(2)(C)(iv) requires the disclosure of any side agreement. As disclosed in the Stipulation (¶2.12), and in Lead Plaintiff's Preliminary Approval Brief (ECF No. 52 at 13), the Settling Parties have entered into a standard supplemental agreement which provides that, if Settlement Class Members opt out of the Settlement such that the number of shares of Fusion common stock represented by such opt-outs equals or exceeds a certain number, Defendants have the option to terminate the Settlement. As is standard practice in securities class actions, while the

---

[4] *See also* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625–26 (2009) (quick pay provisions mitigate against objectors filing meritless appeals hoping to force class counsel to pay them simply to avoid the delay of waiting for the appeal to be decided).

supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

## IV.   CONCLUSION

For the foregoing reasons, the Court should: (1) certify the Settlement Class for the purposes of settlement; (2) approve the Settlement as set forth in the Stipulation; and (3) approve the Plan of Allocation.

Dated:  April 22, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Yu Shi*
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

*Lead Counsel for Lead Plaintiff
and the Class*

**WOLF HALDENSTEIN
ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114

*Additional Counsel for Lead Plaintiff
and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By: */s/ Yu Shi*
Yu Shi

25