**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Lead Plaintiff
and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PATRON, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>KEVIN M. DOTTS and KEITH SOLDAN<br><br>    Defendants. | Case No. 1:19-cv-05362-PGG<br><br><br><u>CLASS ACTION</u> |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, <u>REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF</u>

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY ................................................................. 2

III.  ARGUMENT............................................................................................................... 2

      A.    The Common Fund Doctrine Applies to the Settlement........................................ 2

      B.    The Court Should Award a Reasonable Percentage of the Common Fund............ 3

      C.    The Request Attorneys' Fees are Reasonable.......................................................... 6

            1.    The Request Attorneys' Fees are Reasonable under the Percentage-of-the-Fund Method...................................................................................................... 6

            2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee .................................................................................................... 7

      D.    Other Factors Courts in the Second Circuit Consider to Confirm the Fairness and Reasonableness of the Requested Fee....................................................................... 9

            1.    Time and Labor Expended Support the Requested Fee................................... 10

            2.    The Risks of Litigation Support the Requested Fee ...................................... 11

            3.    The Magnitude and Complexity of the Action Supports the Requested Fee.. 13

            4.    The Quality of Lead Counsel's Representation Supports the Requested Fee  15

            5.    The Requested Fee in Relation to the Settlement ......................................... 16

            6.    Public Policy Considerations Support the Requested Fee ............................. 16

            7.    The Reaction of the Settlement Class Supports the Requested Fee................ 18

      E.    Plaintiff's Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained.............................................................................. 18

      F.    The Proposed Award to Lead Plaintiff is Reasonable ....................................... 20

IV.   CONCLUSION.......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Other Authorities

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ..................................... 10

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 CIV. 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...................................... 8

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................ 4, 16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................................. 2

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................. 9

*Chu v. BioAmber, Inc.*,
  No. 17-cv-1531-JMA-AKT (E.D.N.Y. Dec. 14, 2020) ............................................................ 9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................................... 11

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................. 6, 14, 17

*Collins v. Olin Corp.*,
  No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ....................................... 6

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................................. 5, 8

*Fogarazzo v. Lehman Bros.*,
  No. 03 CIV. 5194 SAS, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ...................................... 6

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................................. passim

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .......................................................................................... 12

*Hall v. AT & T Mobility LLC*,
  No. CIV.A. 07-5325 JLL, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ..................................... 8

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................... 3, 5, 8, 17

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 CIV.5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................................... 15

*In re AOL Time Warner S'holder Derivative Litig.*,
   No. 02 CIV. 6302 (CM), 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ....................................... 8

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................... 13

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   772 F.3d 125 (2d Cir. 2014)........................................................................................... 20

*In re Bisys Sec. Litig.*,
   No. 04 CIV. 3840(JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007)...................................... 8

*In re Blech Sec. Litig.*,
   No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ................................. 6

*In re Bristol-Myers Squibb Sec. Litig.*,
   361 F. Supp. 2d 229 (S.D.N.Y. 2005)........................................................................................ 5

*In re China Sunergy Sec. Litig.*,
   No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 17

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ................... 8, 9, 11, 16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................... 5, 15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ........................................... 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................ passim

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................................... 6, 21

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)..................... 20, 21

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 7, 15, 19

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................... 13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................. 19

*In re Jumia Techs. S.A. Sec. Litig.*,
   Case No. 1:19-cv-04397-PKC (S.D.N.Y. Mar. 24, 2021) ..................................... 9

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................ 20

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 13

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010)................................................................... 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014).................................................................... 6

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005).................................................................................. 5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................... 9

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989)......................................................................... 7

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ......... 3, 15, 21

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................... 5

*Johnson v. Brennan*,
   No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............... 4, 5

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).......................... 6

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   No. CIVA 03-CV-4372 DMC, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) .............. 13

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................... 3, 8, 16

iv

*McDaniel v. Cty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)........................................................................................ 3

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ..................................................................................................... 3

*Missouri v. Jenkins by Agyei*,
491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ..................................... 7, 16

*Pirnik v. Fiat Chrysler Automobiles N.V.*,
No. 15-cv-07199-JMF (S.D.N.Y. Sept. 5, 2019) ........................................................ 9

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)............................................................................... 18

*Savoie v. Merchs. Banks*,
166 F.3d 456 (2d Cir. 1999)......................................................................................... 7

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................... 11

*Stefaniak v. HSBC Bank USA, N.A.*,
No. 1:05-CV-720 S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008)........................... 6

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................... 6

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................................... 17

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................. 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)............................................................................. 4, 5, 7, 8

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)............... 15

## Regulations

15 U.S.C. § 78u-4(a)(4) ......................................................................................... 2, 20

15 U.S.C. § 78u-4(a)(6) ............................................................................................. 5

vi

**9**

Fed. R. Civ. P. 23 ............................................................................................................... 1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Robert Patron ("Lead Plaintiff") respectfully submits this memorandum of law in support of his request for an award of attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff.[1]

## I.   INTRODUCTION

The proposed Settlement, which provides for a payment of $800,000 in cash in exchange for resolution of the Action, represents a favorable result for the Settlement Class, particularly in light of the significant obstacles that Lead Plaintiff would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The risk of losing was real and substantial, and such risk was greatly enhanced by the fact that Lead Plaintiff was litigating against the Defendants who were represented by highly-skilled defense counsel, under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Moreover, Lead Plaintiff learned during the course of this litigation that Defendants' insurers intended to disclaim coverage should the litigation continue; thus, even if Lead Plaintiff were to survive Defendants' motion to dismiss, defeat summary judgment, and prevail at trial, Defendants may not be able to pay a judgment. Accordingly, there was a strong possibility that the case would yield little or no recovery after years of costly litigation. Despite these risks, Lead Counsel worked diligently on the case for almost two years, all on a contingency basis with no guarantee of ever being paid.

Lead Plaintiff believes that an attorney fee award of 28% of the Settlement Amount, plus interest, properly reflects the numerous significant risks taken by Lead Plaintiff and Lead Counsel,

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on June 10, 2020. ECF No. 50.  Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

as well as the favorable result achieved. When examined under either the percentage of the fund or lodestar methods for calculating attorneys' fees, the requested fee is eminently reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.

Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $25,051.08. These expenses were reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

Finally, for approximately two years Lead Plaintiff has spent his time leading this action on behalf of the Settlement Class. Lead Plaintiff requests a service award of $10,000, as authorized under the PSLRA, 15 U.S.C. § 78u-4(a)(4), to compensate him for his time.

## II.    FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Declaration of Yu Shi ("Shi Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel provided for the benefit of the Settlement Class.

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies to the Settlement

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2]  The Second Circuit has confirmed that attorneys who create a "common fund" are entitled to "a reasonable

---

[2] Unless otherwise noted, internal citations and quotations are omitted and emphasis is added.

2

fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Courts have also recognized that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*; *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("'To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.'").

"For the common fund [doctrine] to apply, the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All these elements are present here: Lead Counsel's efforts have conferred a substantial benefit ($800,000 in cash) on an ascertainable class, and a fee award from the common fund will operate equitably "to shift the costs of litigation" to the benefitting group – the Settlement Class Members. *Maley*, 186 F. Supp. 2d at 369. Accordingly, the Court should award attorneys' fees from the common fund.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, courts "'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of*

*Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The Supreme Court has, however, suggested that in common fund cases the attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]"). Similarly, "[t]he trend in this Circuit is toward the percentage method," rather than the lodestar method. *Wal-Mart*, 396 F.3d at 121.

"There are several reasons that courts prefer the percentage method," including that it: (i) "'directly aligns the interests of the class and its counsel' because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made[;]" (ii) is "closely aligned with market practices because it 'mimics the compensation system actually used by individual clients to compensate their attorneys[;]'" (iii) "'provides a powerful incentive for the efficient prosecution and early resolution of litigation[;]" (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method[;]" and (v) "preserves judicial resources because it 'relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions.'" *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *14–15 (S.D.N.Y. Sept. 16, 2011). "In contrast, the 'lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Wal-Mart*, 396 F.3d at 121.

The percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the

4

class." 15 U.S.C. § 78u-4(a)(6); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

Use of the percentage method does not, however, render lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). *See also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (same); *Johnson*, 2011 WL 4357376, at *14-15 ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.").

In sum, the weight of authority suggests that the Court should use the percentage-of recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

**C.      The Request Attorneys' Fees are Reasonable**

**1.      The Request Attorneys' Fees are Reasonable under the Percentage-of-the-Fund Method**

Lead Counsel's request of 28% of the Settlement Amount in attorneys' fees is fair, reasonable, and *below* the range of percentages that the Second Circuit and the Southern District of New York have commonly awarded in class action settlements. *See, e.g.*, *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (approving 33% fee); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding one-third of $1.5 million settlement and collecting cases); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding one-third of $2,795,000 settlement fund).[3]

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel has developed

---

[3] The same is true in other courts. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million"); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund).

sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart,* 396 F.3d at 121 (one of the merits of the percentage method is that it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation'"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In sum, the request for a 28% attorneys' fee is eminently reasonable as it is below the percentage of fees commonly awarded in the Second Circuit for comparable securities class actions.

### 2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[4] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the

---

[4] The Supreme Court and courts in this Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).

lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Here, Plaintiff's Counsel[5] devoted a total of 416 hours to the prosecution of this Action, resulting in a lodestar of $283,293.00. Based on a request for attorneys' fees of 28% of the Settlement Amount (equal to $224,000.00), Plaintiff's Counsel's lodestar yields a negative multiplier of 0.79. This multiplier is <u>*well below*</u> the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (finding that a multiplier of 2.05 is "within a range of reasonableness for other awards that have been approved"); *In re Bisys Sec. Litig.*, No. 04 CIV. 3840(JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding a fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3, which was "not atypical for similar fee-award cases"); *Maley*, 186 F. Supp. 2d at 371 ("[T]he *modest* multiplier of 4.65 is fair and reasonable."); *Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL, 2010 WL 4053547, at *22 (D.N.J. Oct. 13, 2010) ("A multiplier of less than one, as is the case here, is therefore quite reasonable for a lodestar.").[6]

---

[5] Plaintiff's Counsel refers to Lead Counsel and additional counsel Wolf Haldenstein Adler Freeman & Herz LLP, who assisted Lead Counsel on discrete tasks.

[6] *See also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302 (CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) ("The requested multiplier of 1.60 is at the lower end of the range recently seen, which has generally run between 1.5 and 4.0."); *Hicks*, 2005 WL 2757792,

The hourly rates used by Plaintiff's Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Shi Decl., Ex 2 (Rosen Fee Decl. ¶3),  Ex. 3 (WHAFH Fee Decl. ¶3). Courts in this Circuit have approved Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g., Chu v. BioAmber, Inc.*, No. 17-cv-1531-JMA-AKT (E.D.N.Y. Dec. 14, 2020) (Dkt. No. 68); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019); *Pirnik v. Fiat Chrysler Automobiles N.V.*, No. 15-cv-07199-JMF (S.D.N.Y. Sept. 5, 2019) (Dkt No. 369); *In re Jumia Techs. S.A. Sec. Litig.*, Case No. 1:19-cv-04397-PKC (S.D.N.Y. Mar. 24, 2021) (Dkt. No. 128). Additionally, the rates Plaintiff's Counsel billed for their attorneys are comparable to peer plaintiff and defense-side law firms litigating matters of similar magnitude. Shi Decl. ¶35.

In sum, Lead Counsel's requested fee award is below the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiff's Counsel's lodestar. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D. Other Factors Courts in the Second Circuit Consider to Confirm the Fairness and Reasonableness of the Requested Fee

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

at *10 ("In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts."); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

### 1.    Time and Labor Expended Support the Requested Fee

The time and effort expended by Plaintiff's Counsel in prosecuting the Action and achieving the Settlement supports the requested fee. Plaintiff's Counsel's work on this matter included, among other things: (1) investigating the claims in this action to plead a detailed amended complaint, which required hiring private investigators to conduct interviews with former employees, hiring an accounting expert to analyze financial statements, and scouring public records; (2) consulting with loss causation and damages experts; (3) analyzing Defendants' motion to dismiss and evaluated the strength of Defendants' arguments therein; (4) negotiating with Fusion's bankruptcy counsel to ensure that the Settlement Class's claims do not get discharged in bankruptcy, and monitoring and analyzing relevant filings in Fusion's bankruptcy proceeding; (5) preparing a detailed mediation statement and analyzing Defendants' mediation submissions; (6) attended a full-day mediation before Jed Melnick, Esq. of JAMS and continuing negotiations following the mediation; and (7) documenting the Settlement and drafting the preliminary approval papers; and (f) overseeing the implementation of the notice process. Shi Decl., ¶¶20, 21,

Moreover, Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Settlement Hearing scheduled for May 20, 2021, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. Shi Decl. ¶39; *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y.

Apr. 2, 2013) ("That Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). No additional compensation will be sought for this work.  *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The substantial time and effort devoted to this Action by Plaintiff's Counsel to obtain the $800,000 Settlement supports the reasonableness of the fee request.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying this factor, courts have repeatedly recognized that "'class actions confront even more substantial risks than other forms of litigation[,]'" *Comverse*, 2010 WL 2653354, at *5, and that

11

"[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *Flag Telecom*, 2010 WL 4537550, at *27.[7] This case was no different.

From the outset of their involvement in this Action, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of this Action, and thus funds were available to compensate staff and to cover the considerable costs that this Action requires. Plaintiff's Counsel received no compensation during the litigation and have advanced and incurred $25,051.08 in expenses in prosecuting this Action for the benefit of the Settlement Class. Shi Decl. ¶ 36. If not for the Settlement, this significant investment of time and money would have been lost.

While Lead Plaintiff and Lead Counsel believe that the claims in the Complaint have merit, Lead Counsel also recognize that there were a number of substantial risks in the litigation, and that Lead Plaintiff's ability to defeat Defendants' motion to dismiss was far from certain. As discussed in greater detail in the Shi Declaration and the memorandum in support of final approval of the Settlement and Plan of Allocation, submitted herewith, there were substantial risks here with respect to establishing both liability and damages. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

---

[7] *See also Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

Despite the many uncertainties regarding the outcome of the case, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.    The Magnitude and Complexity of the Action Supports the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. CIVA 03-CV-4372 DMC, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). Such was the case here.

13

Not only does the PLSRA require heightened pleading standards for securities fraud class actions, securities class action plaintiffs must also prove esoteric concepts at many junctures to recover on their claims. For example, to prove damages, plaintiffs must hire an expert to combat defendants' expert in putting a price figure not only on the disclosure of information that was allegedly fraudulently withheld but also on all other confounding information released at the same time. Shi Decl. ¶29. These are not simple tasks.

Indeed, to build the case, Lead Counsel needed to, among other things: (1) investigate the claims in this action to plead a detailed amended complaint, which required hiring private investigators to conduct interviews with former employees, hiring an accounting expert to analyze financial statements, and scouring public records; (2) consult with loss causation and damages experts; (3) analyze Defendants' motion to dismiss and evaluate the strength of Defendants' arguments therein; (4) negotiate with Fusion's bankruptcy counsel to ensure that the Settlement Class's claims do not get discharged in bankruptcy, and monitor and analyze relevant filings in Fusion's bankruptcy proceeding; (5) prepare a detailed mediation statement and analyze Defendants' mediation submissions; (6) attend a full-day mediation before Mr. Melnick and continue negotiations following the mediation. If the Action had not been settled, there would have been much more litigation including additional motion practice, such as a class certification motion, summary judgment motions, and *Daubert* motions; discovery, including depositions of fact and expert witnesses; a trial; post-trial motion practice; and mostly likely appeals.

Securities class actions are inherently complex, and this one is no different. Accordingly, the magnitude and complexity of the Action support the requested fee. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("the complex and

14

multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4. The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved. *See Veeco*, 2007 WL 4115808, at *7; *Global Crossing*, 225 F.R.D. at 467. Here, the Settlement provides a favorable result for the Settlement Class in light of the serious risks of continued litigation and the limited and uncertain nature of funds available to pay the Settlement Class's claims. *See EVCI*, 2007 WL 2230177, at *17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."). Lead Counsel respectfully submits that the quality of their efforts in the litigation to date, together with its substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate the Settlement. *See* Shi Decl., Ex. 5, Rosen Law Firm Resume; *see also Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation").

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd,* 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from

15

defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"). Here, Defendants were represented by highly accomplished attorneys at Dechert LLP, an international law firms with skilled and experienced securities practitioners who vigorously represented the interests of their clients throughout the Action.

Notwithstanding this formidable opposition, Lead Counsel was able to present a compelling case and demonstrated willingness to prosecute the Action vigorously which enabled Lead Counsel to achieve the favorable Settlement. Consequently, this factor supports the requested fee.

### 5.    The Requested Fee in Relation to the Settlement

A fee should approximate what counsel would receive when bargaining in the marketplace. *See Missouri*, 491 U.S. at 285. In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III(C) above, the requested 28% fee is <u>*below*</u> the range of percentage fees that courts in the Second Circuit have commonly awarded in comparable cases. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private

16

actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9 ("Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,] . . . [but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").

Indeed, the integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here. *See In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees 'that are sufficient to

17

encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.'").

**7.      The Reaction of the Settlement Class Supports the Requested Fee**

This overwhelmingly positive reaction of the Settlement Class also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). To date, the Claims Administrator had mailed 2,917 Postcard Notices to potential Settlement Class Members informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 28% of the Settlement Fund and up to $35,000 in litigation expenses and Lead Plaintiff would seek an award and reimbursement from the Court up to $10,000. While the time to object does not expire until April 29, 2021, not a single objection has been received as of the date of this writing. Shi Decl. ¶19; Ex. 1 to Shi Decl. (Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections) ("Evans Decl.") at ¶¶6, 13. The lack of objections is "strong evidence" of the reasonableness of the fee request. *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).[8]

**E.      Plaintiff's Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Plaintiff's Counsel also requests reimbursement of $25,051.08, plus interest, in expenses incurred while prosecuting the Action. In support of this request, Plaintiff's Counsel have submitted declarations attesting to the accuracy of these expenses, which are properly recoverable

---

[8] Should any objections be received, Lead Plaintiff will address them in his reply papers.

by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("'Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.'"). The vast majority of the expenses were incurred for professional services rendered by Lead Plaintiff's accounting and damages experts, investigators, and Mr. Melnick's mediation services; the remaining expenses are attributable to the costs of, among other things, service of process, press releases to communicate with potential Settlement Class Members, copying documents, legal and factual research, travel and other incidental expenses incurred in the course of the litigation. Shi Decl., Exs 2 and 3. These expenses were critical to Lead Plaintiff's success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

Additionally, no objections to the expense request have been received, and the amount requested is substantially below the $35,000 limit disclosed in the Notice. *See* Postcard Notice, Summary Notice, and, Long Notice, attached as Exhibits A, C, and D to the Evans Decl. Accordingly, Lead Counsel respectfully requests reimbursement for these expenses.

19

**F.      The Proposed Award to Lead Plaintiff is Reasonable**

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010).

Lead Plaintiff, who is an attorney and investor, has devoted a substantial amount time leading this case on behalf of the Settlement Class. Lead Plaintiff spent time, among other things, monitoring news on the company, reviewing pleadings filed in the Action, participating in discussions with Lead Counsel regarding the litigation and settlement negotiations, and evaluating and approving the Settlement. Shi Decl. ¶¶40-41, Ex. 4 (Declaration of Robert Patron). These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Accordingly, Lead Plaintiff respectfully requests that the Court grant their requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.*; *see also In re Bank*

20

*of Am. Corp. Sec., Derivative, & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Gilat,* 2007 WL 2743675, at *19 (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation")*; Giant Interactive Grp.,* 279 F.R.D. at 166 (awarding $10,000 as an incentive and for lost time).

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (a) award Lead Counsel reasonable attorneys' fees in amount of $224,000, representing 28% of the Settlement Amount; (b) reimburse Plaintiff's Counsel for expenses and costs in the amount of $25,051.08; and (c) reimburse Lead Plaintiff for time spent on the Action in the amount of $10,000.

Dated:  April 22, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Yu Shi*
Laurence Rosen (18)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

*Lead Counsel for Lead Plaintiff*
*and the Class*

**WOLF HALDENSTEIN**
**ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, NY 10016

21

Telephone: (212) 545-4600
Fax: (212) 686-0114

*Additional Counsel for Lead Plaintiff
and the Class*

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By: */s/ Yu Shi*
Yu Shi

23