**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR 5733)
Phillip Kim (PK 9384)
Yu Shi (YS 2182)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: info@rosenlegal.com

*Lead Counsel for Lead Plaintiff*
*and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PATRON, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>KEVIN M. DOTTS and KEITH SOLDAN<br><br>    Defendants. | Case No. 1:19-cv-05362-PGG<br><br>CLASS ACTION |

## DECLARATION OF YU SHI

I, Yu Shi, declare under penalty of perjury that the following is true and correct to the best of my knowledge.[1]

1.      I am an attorney duly licensed to practice law in New York and before this Court. I am an attorney at The Rosen Law Firm, P.A. ("Rosen Law"), Lead Counsel for Lead Plaintiff Robert Patron ("Lead Plaintiff") and the Settlement Class in this litigation ("Action"). I have

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated June 8, 2020, and filed with the Court on June 10, 2020. ECF No. 50.

personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this Declaration in support of Lead Plaintiff's Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff. The purpose of this Declaration is to set forth the nature of the investigation, litigation and negotiations that led to the settlement with Defendants Kevin Dotts and Keith Soldan and former defendant Matthew Rosen (collectively, "Settling Defendants" and with Lead Plaintiff, "Settling Parties"). This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees and expenses and award to Lead Plaintiff are reasonable and should be approved by the Court.

3.      The Settlement provides that the Settlement Class Members – certain investors in the common stock of Fusion Connect, Inc. ("Fusion") – release the claims advanced in this Action for $800,000 USD.

4.      After Lead Plaintiff moved for preliminary approval of the Settlement in June 2020, the Court signed an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members. ECF No. 55.

5.      Lead Plaintiff now seeks final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of 28% of the Settlement Fund (or $224,000), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $25,051.08, and a service award to Lead Plaintiff in the amount of $10,000.

6.    Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Evans Decl.")

7.    Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Laurence Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

8.    Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Matthew M. Guiney on behalf of Wolf Haldenstein Adler Freeman & Herz LLP Concerning Attorneys' Fees and Expenses ("WHAFH Fee Decl.").

9.    Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Robert Patron ("Patron Decl.").

10.    Attached hereto as Exhibit 5 is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume")

11.    Attached as Exhibit 6 is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

**Procedural History**

12.    This Action commenced on June 7, 2019. ECF No. 1. The initial complaint asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Settling Defendants. *Id.* Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Robert Patron timely moved to be appointed Lead Plaintiff. ECF No. 15. The Court granted his motion, granting Patron the authority to, among other things, prepare all pleadings and engage in settlement negotiations on behalf of himself and the putative class. ECF No. 27. The Court also appointed Rosen Law as Lead Counsel. *Id.*

13.     Upon his appointment, Lead Plaintiff, through counsel, further investigated the claims in this action by, among other things, retaining private investigators to interview numerous former Fusion employees at length, and engaging an accounting expert to analyze the financial statements at issue. Lead Plaintiff pled the facts learned in his investigation in the Amended Class Action Complaint ("Complaint"), ECF No. 40. Defendants moved to dismiss the Complaint on January 21, 2020. ECF No. 44.

**Nature of the Allegations in the Complaint**

14.     According to the Complaint, Defendants were previously senior executives at Birch Communications Holdings, Inc. ("Birch"). In 2018, Birch merged with Fusion. The newly-formed, post-merger company retained Fusion's name but adopted Birch's historical financials, and Birch ceased to exist. Following the merger, Defendants assumed high-level positions at Fusion. The first post-merger audit of Fusion revealed that Birch's 2017 financial statements materially understated expenses, and because Fusion had adopted Birch's historical financials, Fusion had to restate expenses in three financial statements.  When Fusion announced the restatement, Fusion's stock price fell, damaging Lead Plaintiff and other similarly-situated Fusion investors.

15.     The Complaint alleges that Defendants were motivated to understate expenses at Birch in order to make Birch a more attractive target for merger. Because Birch was a failing company, Defendants knew that they had no future at Birch, but if they could facilitate the merger with Fusion, then Defendants would assume high-level positions at Fusion, advancing their own careers as executives of a publicly-traded company.

**Settlement Negotiations and Terms**

16.     While Defendants' motion to dismiss was pending, the Settling Parties began exploring the possibility of a settlement. On March 10, 2020, the Settling Parties attended a

mediation session with Jed Melnick, Esq. of JAMS, who has substantial experience in mediating securities fraud class actions.

17.     Despite a full day of arm's-length negotiations, the Settling Parties did not reach any agreement. However, the Settling Parties continued their settlement discussions over the following weeks with the assistance of Mr. Melnick, ultimately agreeing to Mr. Melnick's "mediator's proposal" to settle the Action for $800,000. The Settling Parties signed a term sheet on April 1, 2020, memorializing the key terms of their Settlement.

18.     The Settlement provides for a cash payment of $800,000 to pay the Settlement Class's claims. If the Court grants final approval of the Settlement, Lead Plaintiff, on behalf of the Settlement Class Members, will forever release their claims against the Settling Defendants that were alleged or could have been alleged in this Action. The Settlement Amount of $800,000 represents approximately 12.8% of the maximum damages potentially recoverable in this Action. Lead Plaintiff's damages expert estimated that the maximum damages available in this Action were approximately $6.23 million.

19.     Requests for exclusion and objections to the Settlement must be received by April 29, 2021. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement. *See* Ex. 1, Evans Decl. ¶13. There has been one request for exclusion – from an individual who did not purchase any Fusion stock during the Settlement Class Period, and therefore is not a member of the Settlement Class. *Id.* ¶12. There have been no exclusion requests from any Settlement Class Members.

20.     The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. Ex. 1, Evans Decl. Ex. C (Long Notice) at 5-7. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement

Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged revelation of the truth. The Plan of Allocation then establishes a formula which determines authorized claimants' recognized losses based on the date and price at which the Settlement Class Member purchased and sold Fusion stock.

### Complexity, Expense and Likely Duration of the Litigation

21.     Over the course of this litigation, Lead Plaintiff, through Lead Counsel: (1) investigated the claims in this action to plead a detailed amended complaint, which required hiring private investigators to conduct interviews with former employees, hiring an accounting expert to analyze financial statements, and scouring public records; (2) consulted with loss causation and damages experts; (3) analyzed Defendants' motion to dismiss and evaluated the strength of Defendants' arguments therein; (4) negotiated with Fusion's bankruptcy counsel to ensure that the Settlement Class's claims do not get discharged in bankruptcy, and monitored and analyzed relevant filings in Fusion's bankruptcy proceeding; (5) prepared a detailed mediation statement and analyzed Defendants' mediation submissions; (6) attended a full-day mediation before Mr. Melnick and continued negotiations following the mediation; and (7) documented the Settlement and filed a motion for preliminary approval. Thus, before entering into the Settlement, Lead Counsel and Lead Plaintiff understood the strengths and weaknesses of their case.

22.     If this Action were to proceed, discovery would impose substantial costs, as would the many experts (accounting, market efficiency, damages, etc.) that Lead Plaintiff would have to hire, and summary judgment and trial would be expensive and risky. Not only would the Settlement Class risk recovering nothing at all or less than the Settlement, but because the loser at

trial would almost certainly appeal, the Settlement Class could not collect any judgment for many more years.

### Risks of Continued Litigation

23.     Lead Plaintiff and the Settlement Class face various risks that continued litigation would result in lesser or no recovery. The PSLRA imposes heightened pleading standards for securities fraud cases. Having reviewed Defendants' motion to dismiss, Lead Plaintiff was cognizant of the very real and substantial risk that the Complaint may be dismissed.

24.     For example, Lead Plaintiff must plead facts supporting a compelling inference that Defendants acted with scienter. In Defendants' motion to dismiss, Defendants make colorable arguments against the inference that they knew of Birch's understatement of expenses or that they had motivation to commit fraud.

25.     Even if the Complaint survives Defendants' motion to dismiss, Lead Plaintiff faces the risk that he may lose on summary judgment. Discovery of Defendants' internal documents could have borne out Defendants' position that they had no knowledge of any understatement of expenses at Birch, or that how expenses were recorded at Birch was the result of subjective judgment by Birch's accountants rather than fraud on the part of the Defendants. If the Court were to grant Defendants' motion for summary judgment, then Lead Plaintiff would have spent years, thousands of attorney hours, hundreds of thousands of dollars (if not more) in costs, and much judicial resources, and still get nothing.

26.     Likewise, the jury might find against Lead Plaintiff at trial, recovering nothing for Lead Plaintiff and the Settlement Class after expending significantly more time, expense, judicial resources, and the jury's time.

27.     Even if Lead Plaintiff prevailed at trial and obtained a favorable jury verdict, there remained a real risk that it might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, the appeal would be time consuming, taxing the Second Circuit's resources, and Lead Plaintiff again would be left without any recovery.

28.     Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a complicated concept. Defendants would oppose any expert Lead Plaintiff retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

29.     Establishing damages in this case would be particularly difficult. Defendants would hire an expert to disaggregate the portion of the alleged price declines that arose from the disclosure of the understatement of expenses from other negative disclosures that occurred on the same day. For example, on April 2, 2019, Fusion not only disclosed the understated expenses, but also revealed that Fusion was defaulting on a large loan. Defendants' expert would likely contend that the stock drop was primarily or entirely due to the disclosure of the loan default, which would significantly reduce or even eliminate damages. Lead Plaintiff's expert would need to demonstrate that the entirety of the stock drop was due to the disclosure of the understatement of expenses. Indeed, disaggregating the impact of the corrective information from all other news released at the same time would prove challenging and may significantly lower damages.

30.     If at any of these stages the Court or jury found Lead Plaintiff's damages expert and theory legally or factually insufficient, Lead Plaintiff would have spent much more time and money to end up with less than the $800,000 recovery provided under the Settlement today, or even no recovery.

31.     Had the Settling Parties continued to litigate this Action, in addition to engaging in discovery, Lead Plaintiff would have had to move for class certification. This motion would be expensive and time-consuming, requiring Lead Plaintiff to produce documents, sit for depositions, and engage an expert to demonstrate that Fusion's stock traded on an efficient market and that there was a common methodology to calculate damages for the Settlement Class. Class certification is typically vigorously opposed by defendants in securities class actions.

32.     Moreover, in securities class actions, plaintiffs typically look to the company defendant for settlement funds. Here, however, Fusion filed for bankruptcy and is therefore not a defendant. While Defendants were ostensibly covered by Fusion's Directors & Officers ("D&O") insurance, the amount is limited and would have depleted further if the litigation were to continue. Additionally, the D&O insurer indicated that it intended to disclaim coverage because the acts at issue in this litigation pre-dated Defendants' tenure at Fusion and therefore are not covered under Fusion's D&O policy; this would have eliminated the most certain source of funding for any recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

33.     Lead Counsel have extensive experience and a long track record of success litigating securities class actions in courts throughout the country, including in the Southern District of New York. *See* Ex. 5, Rosen Law Firm Resume.

34.     Defendants were represented by very capable counsel at Dechert LLP, one of the largest law firms in the world with considerable success and experience defending securities class actions.

**Lead Counsel's Fee Request is Justified**

35.    Plaintiff's Counsel[2] have worked diligently to achieve the Settlement, expending 416 hours for an aggregate lodestar of $283,293. Ex. 2, Rosen Fee Decl. ¶3 and Ex. 3, WHAFH Fee Decl. ¶3. The lodestar multiplier for the requested fee is 0.79. The rates Plaintiff's Counsel billed for their attorneys are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 6, Peer Firms Billing Rates.

36.    Plaintiff's Counsel spent a total of $25,051.08 in unreimbursed expenses in connection with the prosecution of this Action, substantially less than the $35,000 amount described in the Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action Settlement. Ex. 2, Rosen Fee Decl. ¶5; Ex. 3, WHAFH Fee Decl. ¶5. Plaintiff's Counsel have received no compensation from this case during the litigation.

37.    From the outset, Plaintiff's Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Plaintiff's Counsel was greater than those for a firm paid on an ongoing basis.

38.    The hourly rates Plaintiff's Counsel used to arrive at its lodestar calculation are the firms' current, customary rates. Ex. 2, Rosen Fee Decl. ¶3 and  Ex. 3, WHAFH Fee Decl. ¶3.

---

[2] Plaintiff's Counsel refers to Lead Counsel and additional counsel Wolf Haldenstein Adler Freeman & Herz LLP, who assisted Lead Counsel on discrete tasks.

39.     Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Settlement Hearing scheduled for May 20, 2021, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

**The Requested Award to Lead Plaintiff is Justified**

40.     For approximately two years, Lead Plaintiff has spent time leading this action on behalf of the Settlement Class. Lead Plaintiff requests an amount of $10,000 to compensate him for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

41.     Lead Plaintiff has devoted a substantial amount time to this case, including time monitoring news on the company, reviewing the pleadings and other key litigation materials and communicating and corresponding with Lead Counsel throughout the pendency of the Action regarding the litigation and settlement. *See* Ex. 4, Patron Decl.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of April, 2021, in New York, NY.

*/s/ Yu Shi*
Yu Shi

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April, 2021, a true and correct copy of the foregoing **DECLARATION OF YU SHI** was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Yu Shi*
Yu Shi